THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
RAFFI KHATCHADOURIAN,                   )
                                        )
            Plaintiff,                  )
        v.                              )        Civil Action No. 1:16-cv-0311 (RCL)
                                        )
DEFENSE INTELLIGENCE AGENCY,            )
*et. al*,                               )
                                        )
            Defendants.                 )
_____)

### JOINT STATUS REPORT AND
### PLAINTIFF'S REQUEST FOR STATUS CONFERENCE

Plaintiff Raffi Khatchadourian ("Plaintiff") and Defendants Defense Intelligence Agency

("DIA") and Department of Defense (collectively, "Defendants") hereby submit this joint status

report pursuant to the Court's July 6, 2017 Scheduling Order, ECF No. 44.   Plaintiff also

respectfully requests, for the reasons outlined herein, that the Court set a status conference in this

matter for August 7, 2017 or as soon thereafter as is convenient for the Court.   Defendants oppose

Plaintiff's request for a status conference.

**Plaintiff's Statement/Position**

1. Background

This case concerns two requests submitted by Mr. Khatchadourian, a journalist and staff

writer for *The New Yorker*, under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  *See*

*generally* Compl., ECF No. 1, ¶¶ 14, 15.   The first request sought records concerning the

Information Review Task Force ("IRTF"), a governmental unit created in 2010 within DIA to

assess the impact on the United States of the disclosure of certain government records that had

been provided to the website WikiLeaks.  *Id.* ¶¶ 7, 15.   Specifically, that request, which was

submitted on February 16, 2012, asked for all records "relevant to the creation, scope, structure, and responsibilities of the Information Review Task Force," as well as "conclusions, reports or assessments (provisional and/or final) that have been generated by the IRTF" and "[r]ecords of all previous FOIA requests for information pertinent to the IRTF." *Id.* ¶ 15 & Ex. B (hereinafter, the "First Request"). On October 20, 2015, Mr. Khatchadourian made a second FOIA request for certain categories of records concerning the handling of his First Request. *Id.* ¶ 78, 79 & Ex. H (hereinafter the "Second Request"). DIA's processing of records responsive to Mr. Khatchadourian's First Request is presently at issue.

After this lawsuit was initiated on February 22, 2016, the parties agreed to a schedule for Defendants to process and release records responsive to both of Mr. Khatchadourian's requests. *See* Joint Status Report, ECF No. 14. After reviewing the initial production and additional information provided by Defendants, Mr. Khatchadourian raised concerns about the sufficiency of their search for responsive records, specifically noting that no internal emails had been released or listed as withheld on the Defendants' draft *Vaughn* index in response to the First Request. Plaintiff subsequently learned that Defendants had interpreted the First Request as not seeking email records. Joint Status Report, ECF No. 25. Following discussions between counsel, Defendants agreed to conduct a search for email records responsive to the First Request. *Id.*

Defendants' preliminary search for email records concerning the IRTF yielded approximately 1.8 million emails. In an effort to narrow the scope of email records that Defendants would be required to review and process, Mr. Khatchadourian agreed to limit the scope of responsive emails to those containing the search terms "IRTF" or "Information Review Task Force." Mr. Khatchadourian also agreed to a cut-off date of June 5, 2013. Defendants' counsel

has represented that imposing those parameters yielded approximately 118,000 emails, not including attachments.

In the interest of reducing that number even further, Mr. Khatchadourian provided additional parameters to Defendants.  Specifically, Plaintiff proposed that Defendants review and process only those emails that were created before June 5, 2013 that contain either "IRTF" or "Information Review Task Force" and that also met one of several other criteria—either the email was sent or received by one of a number of persons involved in the IRTF or specified other government entities, or contained another search term identified by Plaintiff.  Applying twelve of these additional parameters reduced the total number of emails to approximately 17,000.[1]

In the interest of further reducing the number of email records that Defendants would be required to review and process, the parties agreed as an initial matter to a "test" process, whereby Defendants would review for relevancy and process a small "test" batch of 300 of those 17,000 emails using agreed upon criteria.

The first "test" batch of 300 emails was identified using the following criteria:

(1) Containing "IRTF" or "Information Review Task Force", AND

(2) Created before June 5, 2013, AND

(3)

    (a) The first 100 emails (sorted chronologically) with "extradit!",[2]

    (b) The first 100 emails (sorted chronologically) with "surveil!",

    (c) The last 100 emails (sorted chronologically) with "Assange".

---

[1] Within that universe there are, for example, 3,886 emails that contain "Scott Liard" (the name of the IRTF Chief), 2,657 emails that contain the term "Assange[,]" and 1,464 that include the term "Manning[.]"

[2] Some of the terms proposed by Plaintiff contain the root expander "!" (i.e., a search for "extradit!" would return records with "extradite", "extradition", extradited", etc.).

Defendants completed their relevancy review of the first "test" batch of 300 emails, which began on January 30, 2017, on March 7, 2017.   Counsel for Defendants represented that after conducting their relevancy review, Defendants determined that only six of the 300 emails and 98 of the 424 attachments to those emails were responsive to Mr. Khatchadourian's First Request; the remainder were deemed "not responsive" or were found to be duplicative.   Defendants subsequently released what they assert are the non-exempt portions of those 300 email records that they deemed responsive to Plaintiff's First Request.   No emails were included in that release.

The parties thereafter agreed to run a second "test" of a small batch of 300 emails, this time focusing on the email accounts of individuals who were senior members of the IRTF, rather than using additional search terms.

The second "test" batch of 300 emails was identified using the following criteria:

(1) Containing "IRTF" or "Information Review Task force", AND

(2) Created before June 5, 2013, AND

(3)

     (a) The first 100 emails (sorted chronologically) for "Robert A. Carr",

     (b) The first 100 emails (sorted chronologically) for "Scott Liard",

     (c) The first 100 emails (sorted chronologically) for "John Kirchhofer".

Defendants completed their relevancy review of the second "test" batch of 300 emails on May 1, 2017.   Defendants' counsel has represented that, according to the agencies' review, 79% of those emails are "non-responsive" and only 4% were responsive.[3]   Defendants have proposed

---

[3] Plaintiff has, through his counsel, on a number of occasions expressed concern over the methodology being used by Defendants to determine what is responsive to his First Request, given the number of email records in both the first and second "test" batches that were deemed "non-responsive" by Defendants.

beginning to process those records from the second "test" batch that they have deemed responsive on August 15, 2017, and estimate that it will take three months to complete processing those records with productions every 30 days.

As set forth in more detail below, following the production of what Defendants assert are non-exempt responsive emails from the first "test" batch of 300 emails, and Defendants' completion of their relevancy review of emails in the second "test" batch of 300 emails, the parties have met and conferred and are unable to agree on an appropriate course of action for the processing of email records in response to the First Request.  Defendants have stated that they intend to unilaterally proceed with the review and processing of only those email records that meet the following criteria: (1) emails from six individuals whose identity will not be provided to Mr. Khatchadourian, that (2) were created over a 36-day period between July 25, 2010, and August 30, 2010, and (3) contain "IRTF" or "Information Review Task Force", as well as one of the following additional search terms:  "Organiz*", "Scope", "TF 725", "Structur*", "CONOPS".  Plaintiff strongly objects to these parameters.  In addition, on July 6, 2017, Defendants' counsel informed Plaintiff's counsel that Defendants had identified another database that was not previously searched but "is reasonably likely to contain records responsive[.]"

   2.  Plaintiff's Position

   Plaintiff strongly objects to the narrow parameters that Defendants have stated that they intend to impose on the review and processing of email records responsive to Plaintiff's First Request.  The First Request was intended to obtain records that would provide Plaintiff with a comprehensive look at the creation, responsibilities, activities, and conclusions of the IRTF.  *See* Compl. ¶¶ 14–15 & Ex. B.    Most (if not all) of the approximately 118,000 email records Defendants have identified that contain "IRTF" or "Information Review Task Force" and were

created before June 5, 2013 would be expected to be responsive to Plaintiff's First Request. Plaintiff has not, however, asked that all of those email records be reviewed and processed. Instead, he has worked diligently with Defendants in an attempt to reach agreement on reasonable ways to reduce the number of email records that Defendants would need to review and process.

Plaintiff has made clear to Defendants his willingness to consider and agree to additional reasonable parameters to further narrow the scope of email records that would need to be reviewed and processed by DIA (including by limiting processing to emails found in the accounts of certain individuals). Plaintiff has not seen, because Defendants have not yet released, those portions of records from the second "test" batch that Defendants have determined to be non-exempt and responsive. Once Plaintiff has reviewed those records, he believes he will be able to propose final search terms and/or other parameters to further reduce the number of email records that Defendants need to review and process, which he always understood to be the purpose of the "test" searches. Plaintiff has proposed—and Defendant has rejected—completing the "test" process so that Plaintiff can identify additional search parameters that he would be willing to agree to voluntarily.

Instead, Defendants have informed Mr. Khatchadourian that they intend to unilaterally proceed with the review and processing of only those email records that meet all of the following criteria: (1) emails from six individuals whose identity will not be provided to Mr. Khatchadourian, that (2) were created over a 36-day period between July 25, 2010, and August 30, 2010, and (3) contain "IRTF" or "Information Review Task Force", as well as one of the following additional search terms:  "Organiz*", "Scope", "TF 725", "Structur*", "CONOPS".

This proposal is facially unreasonable.  Among other things, Mr. Khatchadourian previously agreed to a cut-off date of June 5, 2013 for responsive emails, a date that coincides with

the duration of the IRTF.[4]  Defendants, however, now intend to limit their review and processing to emails created during an approximate one-month period of time that coincides with just the creation of the IRTF.  This would exclude, among other things, "conclusions, reports or assessments (provisional and/or final" that were generated by the IRTF, which were specifically requested by Plaintiff.  *See* Compl. ¶¶ 14–15 & Ex. B.  Indeed, it is Plaintiff's understanding that the IRTF completed its final assessment on or about July 29, 2011, *id.* at ¶ 13, a full year after the cut-off date proposed by Defendants.

To the extent that Defendants proceed with the review and processing of email records responsive to Plaintiff's First Request in the manner outlined above, and then move this Court for summary judgment, Plaintiff will oppose that motion, including on the grounds that the limitations unilaterally imposed by Defendants on the review and processing of those records were unreasonable.  Plaintiff believes that there are more efficient means of proceeding that would serve the interests of judicial economy and lead to a more expeditious resolution of this case.  Plaintiff also believes that the parties would benefit from the Court's guidance and assistance in identifying the most efficient means of proceeding in this matter and in crafting an appropriate scheduling order.

Specifically, assuming that Defendants proceed with the review and processing of email records responsive to Plaintiff's First Request in the manner outlined above, Plaintiff respectfully seeks an order from the Court setting a reasonable timetable for Defendants to complete its processing of those records, as well as other records that have yet to be processed, which include

---

[4] It is Plaintiff's understanding that a second Information Review Task Force may have been initiated in the wake of stories based on information provided by Edward Snowden, the first of which was published on June 6, 2013.  *See* Glenn Greenwald, *NSA collecting phone records of millions of Verizon customers daily*, The Guardian (Jun. 6, 2013), https://www.theguardian.com/world/2013/jun/06/nsa-phone-records-verizon-court-order.

emails and attachments from the second "test" batch and records located in an additional database that Plaintiff's counsel was informed of on July 6, 2017.

As noted above, to date, counsel for Defendants has represented that Defendants will not begin to process the records it has deemed responsive from the second "test" batch until August 15, 2017, and has stated that it will take three months to complete that processing. To be clear, Defendants have represented that 4% of the 300 emails from the second "test" batch, and 14% of the 348 attachments, are responsive. Thus, it is Defendants' position that it will process **12** emails and approximately **49** attachments in a three-month period. This glacial processing speed is well-below agency norms, which are typically closer to 500 documents per month. *See, e.g.*, *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 265–69 (D.D.C. 2014) (recognizing that 500 documents per month is the FBI's "customary rate", and as a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline[]" ordering the production of 5,000 pages a month given the "importance of [the plaintiffs'] work" and the possibility of her death before the agency completed its production.). *See also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (noting that "the D.C. Circuit has held that '[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms' and 'unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses.'" (citation omitted)). Accordingly, Plaintiff seeks the Court's assistance in setting a reasonable timetable for the processing of records responsive to his First Request that will move this case, which has been pending for more than one year, towards resolution.

For the foregoing reasons, Mr. Khatchadourian respectfully requests that the Court set a status conference at its convenience on or after August 7, 2017.

**Defendants' Statement/Position**

Defendants' position is that a status conference is unnecessary at this stage in the litigation.

Plaintiff's FOIA request contains two relevant prongs: (1) "documents relevant to the creation, scope, structure, and responsibilities" of the IRTF; and (2) "[a]ny conclusions, reports, or assessments (provisional or final) that been generated by the IRTF. *See* Dkt. No. 4-1. Defendants have interpreted the first prong to seek formational documents such as records containing information about the scope, performance, and summary of deliverables, concept of operations, mission statements, mission requirements, leadership chain of command, and organizational charts, among others. The second prong is a relatively narrow request for conclusory documents.

The parties have attempted for several months to agree upon a reasonable plan for searching potentially responsive email records. Initially, they agreed that Defendants would conduct a search based upon search terms proposed by Plaintiff. These search terms included words such as Assange, surveil, and extradite (as well as variants using root expanders) as well as names of personnel. This search resulted in the retrieval of more than 18,000 potentially responsive email records. After discussions with Plaintiff, Defendants reviewed two sample sets from these potentially responsive email records. Defendants have reviewed both sample sets for responsiveness. They determined that only 2-4% of the sampled emails and 20-23% of their associated attachments were responsive to Plaintiff's FOIA request. Of the attachments, on average, 24% were duplicative.

It is unsurprising that the results had such low rates of responsiveness. The terms proposed by Plaintiff are broad and could capture many emails completed unrelated to the

subject matter of the request (e.g. any email sent by one of the individuals whose name was a search term which mentioned the IRTF, or any news clipping forwarded to a member of the IRTF that mentioned Mr. Assange).

Continuing with review of the email records generated by Plaintiff's proposed search terms is unreasonable, in Defendants' opinion, given the very low rate of responsive records. As such, Defendants have put together an alternate plan for review of email records, which is based upon interviews conducted with individuals closely associated with the creation of the IRTF. The search is targeted to those individuals who were significantly involved in the creation of the IRTF, and is limited by timeframe to focus on the relevant period---the time during which the IRTF was being formed. The search includes search terms developed by DIA which are based upon a review of the responsive records already identified by DIA. The proposed search terms are: Organiz*, Scope, TF 725 (an early working name of the organization that became the IRTF), Structur*, and CONOPS (terminology related to plans of operation).

Plaintiff's challenge to the reasonableness of this search is baseless. Indeed, Plaintiff's assertion that "[m]ost (if not all)" of the email records that contain "IRTF" or "Information Review Task Force" would be expected to be responsive to the FOIA request greatly misconstrues the scope of the request, which seeks a specific subset of records related to or generated by the IRTF. (And, indeed, a FOIA request seeking all emails mentioning the IRTF would be facially overbroad). The timeframe selected is a reasonable means of targeting correspondence related to setting up the IRTF, which is potentially responsive to the first prong of the FOIA request. Defendants determined that documents responsive to the second prong of the request ("conclusions, reports or assessments …") are most likely found in electronic databases, not in email records.

Defendants' position is that it is reasonable for them to proceed with this search, which they are prepared to defend as adequate at the appropriate stage, that is summary judgment.  By July 14, 2017, they will have identified the number of potentially responsive email records, and will be able to propose a timeframe for proceeding with the review of those records.  Defendants note that they have recently identified a previously unidentified electronic database which may contain responsive records.  By July 14, 2017 they will also be prepared to provide more information regarding their plan for this database to Plaintiff.

Finally, Defendants have completed review of the responsive records from the first sample set for production, and have produced responsive, non-exempt records or portions thereof to Plaintiff.  Defendants currently are reviewing and processing the second sample set for production to Plaintiff.  They propose making this production on a similar timeframe as the parties agreed for the first sample set, with a three month rolling production that would begin on August 15, and continue every 30 days thereafter.  *See* Dkt. No. 37.  This proposed production schedule is based upon the workload of the DIA FOIA office and competing litigation deadlines.  It also takes into account the necessity of interagency consultation for the records.

As such, Defendants do not believe that Court involvement is necessary at this stage in the litigation.

Dated: July 7, 2017                                    Respectfully submitted,

                                                       CHAD A. READLER
                                                       Acting Assistant Attorney General

                                                       MARCIA BERMAN
                                                       Assistant Branch Director

                                                       /s/ Robin Thurston_____
                                                       Robin Thurston (IL Bar No. 6293950).
                                                       Trial Attorney
                                                       U.S. Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-8188
Facsimile: (202) 616-8470
Robin.F.Thurston@usdoj.gov

*Counsel for Defendants*

/s/ Katie Townsend_____
KATIE TOWNSEND (DC Bar #1026115)
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

*Counsel for Plaintiff Raffi Khatchadourian*