## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RAFFI KHATCHADOURIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-0311 (RCL) |
| | ) | |
| DEFENSE INTELLIGENCE | ) | |
| AGENCY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR BIFURCATED BRIEFING AND LEAVE TO CONDUCT LIMITED DISCOVERY

Pursuant to the Court's Orders of February 23 and March 22, 2018, Plaintiff Raffi Khatchadourian hereby submits this Reply in support of his Motion for Bifurcated Briefing and Leave to Conduct Limited Discovery ("Pl.'s Mot." or "Motion", ECF No. 52).

This Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act") lawsuit has been pending for more than two years.  Plaintiff submitted the first FOIA request at issue in this action to Defendants Defense Intelligence Agency ("DIA") and Department of Defense ("DoD") (collectively, "Defendants") more than six years ago.  By his pending Motion, Mr. Khatchadourian seeks two forms of relief intended to move this long-running case more quickly towards resolution, so that he may promptly obtain access to agency records that he is entitled to under the Act: (1) a bifurcated briefing schedule that will allow the Court to resolve, first, a critical, threshold dispute between the parties as to the universe of records that Defendants must review and process, and (2) leave to propound limited discovery—specifically, four interrogatories—asking Defendants to simply tell Plaintiff whether or not records referred to in internal agency e-mails have been released and, if not, where they are located on Defendants'

draft Vaughn index.  For the reasons set forth below, Defendants' opposition to the relief sought

by Plaintiff is unfounded and Plaintiff's Motion should be granted in its entirety.

## ARGUMENT

### I.       Bifurcated briefing is warranted.

As an initial matter, the record in this matter makes clear Mr. Khatchadourian's good

faith efforts to work with Defendants to identify mutually agreeable ways to reduce the number

of e-mail records that Defendants would be required to review and process in response to his

First FOIA Request.  *See* Pl.'s Mot. at 2–4.  Defendants represented to Mr. Khatchadourian that

they had completed their search for records responsive to that request more than two years ago

without having conducted <u>any</u> search for e-mail records.  *Id.* at 3.  It was only after Plaintiff

inquired about the lack of e-mails in the records released to him that Defendants searched, for the

first time, for relevant e-mails.  *Id.*  Defendants located approximately 1.8 million potentially

responsive e-mails utilizing search parameters that they—not Plaintiff—had selected.  *Id.*

Thereafter, Plaintiff worked with Defendants, at their request, to attempt to reduce the number of

e-mails that Defendants would have to review and process, *id.* at 3–4, agreeing to, among other

things, a cut-off date of June 5, 2013, *id.* at 3.  Plaintiff would have preferred to continue

working towards additional, mutually agreed-upon parameters, and avoided unnecessary

briefing; it was <u>Defendants'</u> decision to abandon that process and apply facially unreasonable

criteria to limit the records they would review, over Plaintiff's objections.

To be clear, the issue is not the adequacy of Defendants' "search" *per se*, *cf*. Defs.' Opp.

at 2, but rather the lawfulness of Defendants' decision to review and process only a small

fraction of e-mail records located in their search.  Defendants' search identified approximately

1.8 million potentially responsive e-mails and, for purposes of Defendants' review and

processing, the parties agreed to narrow the scope of potentially responsive records to approximately 118,000. Of those, Defendants unilaterally decided to review only 1,750 e-mails and attachments. *See* Pls.' Mot. at 3, 9. That decision—which appears to be based on nothing more than Defendants' desire to process as few e-mail records as possible, *see* Second Townsend Decl., Ex. 1 (Defendants' counsel stating that the number of potentially responsive records "is probably larger than either of us wants to take the time to process")—is simply not permissible under FOIA. *See Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 455 (D.D.C. 2014), *aff'd* (on unrelated grounds) *sub nom. Tereshchuk v. Bureau of Prisons, Dir.*, No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015) (stating that it is the agency's burden to demonstrate that responding to a FOIA request is unreasonably burdensome, and rejecting agency's claim that reviewing and redacting "214,456 responses stored in hardcopy in various facilities" is unduly burdensome); *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (rejecting agency's claim that searching through 25,000 paper files is unduly burdensome).

As discussed in Plaintiff's Motion, Defendants' decision to only review and process e-mails from a 36-day time period corresponding with the formation of the IRTF is facially unreasonable. *See* Defs.' Opp. at 5. Defendants concede that their review was designed to address only one part of Plaintiff's First FOIA Request, *see id.*, which seeks records "relevant to the creation, scope, structure, and responsibilities of the Information Review Task Force[,]" which was in existence for approximately one year. Even assuming, *arguendo*, that records responsive to that portion of Plaintiff's request would be limited to a narrow, 36-day time period—which they are most certainly not—Defendants offer no explanation, whatsoever, for their refusal to review <u>any</u> e-mails for purposes of responding to the second part of Plaintiff's request, which asks for "conclusions, reports or assessments (provisional and/or final) that have

been generated by the IRTF . . . ." Compl. ¶¶ 14–15 & Ex. B. Such records would plainly be generated throughout the duration of the IRTF, and at its conclusion, not just at its inception. Defendants' wholesale refusal to review and process any e-mail records in connection with the second part of Plaintiffs' request is a blatant violation of their obligations under FOIA.[1]

Whether Defendants can lawfully limit their review and processing of e-mail records in response to Plaintiff's First FOIA Request to only those e-mails that, among other things, were generated during a 36-day window is a question that can and should be resolved by the Court without delay. By his pending Motion, Plaintiff seeks an opportunity for the Court to expeditiously address this threshold issue, which, if resolved in his favor, will require Defendants to review and process additional e-mail records. Given the likelihood that Defendants would, if required to review and process additional e-mails, assert many of the same exemptions they have previously asserted to withhold responsive records, bifurcated briefing will conserve party and judicial resources. It is undoubtedly more efficient for the Court to define the relevant universe of records at issue, and for Defendants to review and process those records, before proceeding to resolving any disputes regarding FOIA exemptions and withholdings.

Relatedly, as set forth in Plaintiff's Motion, the second threshold issue that Plaintiff seeks to have addressed first under a bifurcated briefing schedule is the manner in which Defendants are determining which records are "responsive" to Plaintiff's First FOIA Request. Tellingly,

---

[1] Indeed, Defendants' refusal to review potentially responsive records located in their search smacks of the same type of bad faith, discussed in more detail below, that has been held to justify discovery. *See, e.g.*, *Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 184 (D.D.C. 2013) ("The possibility that the agency purposefully excluded the top leaders of the EPA from the [e-mail] search, at least initially, suggests an unreasonable and bad faith reading of Landmark's FOIA request and subsequent agreement to narrow its scope."); *cf. Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("agency must show that it made a *good faith* effort to conduct a search for the requested records[.]" (emphasis added)).

Defendants make no attempt in their opposition to explain why their "responsiveness" rate for the small selection of e-mails that they have reviewed is so low. *Cf.* Pl.'s Mot. at 8–9 (outlining Plaintiff's concerns regarding the small number of records Defendants have deemed "responsive"). It is the unambiguous law of this Circuit that agencies have "a duty to construe a FOIA request liberally." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citation omitted). Yet Defendants offer no explanation for why only 5 (or 0.02%) of the 1,750 e-mails they selected for review, using their own criteria, were deemed "responsive" to Plaintiff's First FOIA Request. Given the scope of Plaintiff's request, *see* Compl. ¶¶ 14–15 & Ex. B (requesting all records "relevant to the creation, scope, structure, and responsibilities of the Information Review Task Force," and "conclusions, reports or assessments (provisional and/or final) that have been generated by the IRTF"), and Defendants' obligation to construe it broadly, Defendants' silence regarding their criteria for determining "responsiveness" speaks volumes. Because this threshold issue too, if resolved in Plaintiff's favor, will require Defendants to process additional e-mail records, it would be most efficiently addressed without delay pursuant to a bifurcated briefing schedule.

## II.     Limited discovery is proper and necessary at this time.

As a general matter, Plaintiff does not disagree with Defendants that discovery is not a typical feature of FOIA litigation. However, this is not a typical FOIA case. It is unusual for a requester to have internal communications from an agency's own personnel repeatedly raising concerns that specific records are being improperly and unjustifiably withheld in response to a request. *See* Pl.'s Mot at 10–14. And Defendants' argument that the targeted information sought by Plaintiff's proposed interrogatories is somehow "not relevant to the question of whether DIA

properly withheld documents under Exemptions 1 and 3[]" fails on its face.  Defs.' Opp. at 8.[2]

The discovery sought by Plaintiff is necessary for Plaintiff and, ultimately, the Court to evaluate

the propriety of Defendants' withholdings, and discovery is warranted here in light of evidence

of bad faith on the part of the agency, and inconsistencies in the record.  *See Military Audit*

*Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (summary judgment on the basis of agency

affidavits is proper if they are sufficient and "not controverted by either contrary evidence in the

record nor by evidence of agency bad faith.").

As a preliminary matter, Plaintiff's request for leave to propound limited discovery is

timely.  Contrary to Defendants' assertion that discovery is only permissible after an agency

moves for summary judgment, *see* Defs.' Opp. at 8, there is no such rule.  *See Bureau of Nat.*

*Affairs, Inc. v. I.R.S.*, 24 F. Supp. 2d 90, 92 (D.D.C. 1998) (FOIA actions "are not exempted

from the discovery provisions of the Federal Rules of Civil Procedure and the scope of the

discovery permitted in such actions lies in the court's discretion.").  And district courts have

granted leave to conduct discovery in FOIA cases, in appropriate circumstances, before summary

judgment.  *See, e.g., Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,

No. CIV. 05-2078 (EGS), 2006 WL 1518964 (D.D.C. June 1, 2006) ("*CREW*") (granting

discovery in the form of depositions before summary judgment given evidence of agency bad

faith); *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 210 (N.D.N.Y. 1998) (granting

discovery in the form of interrogatories before summary judgment in light of, *inter alia*, "direct

contradictions, questions of fact, and questions of good faith . . . .").  Defendants' reliance on

---

[2] Plaintiff is puzzled by Defendants' claim that "the agency here has yet to even formally assert Exemption 1 or 3 over any of the withheld information[.]"  Defs.' Opp. at 10.  Defendants have "formally" asserted both Exemptions 1 and 3 as grounds for withholding records and portions thereof responsive to Plaintiff's First FOIA Request at both the administrative stage, Compl. Ex. E, ECF No. 1-5, and in litigation.

*Murphy v. FBI*, 490 F. Supp. 1134 (D.D.C. 1980), is thus misplaced.  Even if the district court's

dicta that is quoted by Defendants was consistent with subsequent case law in this Circuit, which

it is not, *Murphy* is distinguishable.  The FOIA plaintiff in *Murphy* propounded discovery a mere

11 days after filing his complaint, before the agency had even filed an answer.  *See id.* at 1136.

In this case (which has been pending for more than two years), Defendants have filed an answer

(ECF No. 12), provided Plaintiff with a partial draft *Vaughn* index (ECF No. 51-2, Ex. 2), and,

according to Defendants, "produced all responsive, non-exempt records . . . [,]" Defs.' Opp. at 5.

In short, Plaintiff's request for leave to propound limited discovery is timely.

A. Discovery is warranted given evidence of agency bad faith.

Defendants do not attempt to dispute (nor could they) that discovery is warranted in

FOIA cases where there is evidence of agency bad faith.  In addition to the cases identified in

Plaintiff's Motion, *see* Pl.'s Mot. at 11, *CREW* is also instructive here.  In that case, the district

court ordered depositions of four Department of Justice personnel before summary judgment

proceedings on the basis of evidence of bad faith that was arguably far less powerful than the

evidence present here.  *See* 2006 WL 1518964, at *2.

The requester in *CREW* presented, and the court found sufficient to necessitate discovery,

the following evidence of bad faith: the agency had (1) taken seven months to resolve a fee

waiver request and appeal, (2) failed to adequately explain why it took five months to perform

two hours of searches, (3) failed to release records, and (4) took longer to respond to the FOIA

request than was typical for other FOIA requests received by the agency.  *See id.*  Here, the

discovery sought by Plaintiffs is more narrow than the depositions sought in *CREW*, and the

evidence of agency bad faith more substantial.  Plaintiff's First FOIA Request was submitted

more than six years ago; by way of comparison, DIA's FY2017 averages for processing simple,

complex, and expedited requests was 8, 575, and 28 days, respectively.[3]  And even setting aside

(1) Defendants' initial failure to conduct <u>any</u> search for e-mail records in response to Plaintiff's

request, (2) Defendants' abrupt abandonment of what Plaintiff had been led to believe was a

good faith effort to mutually agree as to the scope of  Defendants' review and processing of e-

mail records, and (3) its unilateral decision to engage in a facially unreasonable review process

for e-mails, over Plaintiff's objections, there is still more direct evidence of agency bad faith.

E-mails obtained from Defendants through Plaintiff's Second FOIA Request show a DIA FOIA

analyst repeatedly warning that information responsive to Plaintiff's First Request was being

improperly withheld.  *See* Pl.'s Mot. at 12–13 (ECF No. 52) & Townsend Decl. Ex. 1 (ECF No.

52-1).  The FOIA analyst states, for example:

> Some of the documents being denied in full contain unclassified/FOUO paragraphs
> where the blanket use of B1 and B3 is being used incorrectly.  I've viewed a few
> of the *denied in full documents* and saw the unclassified paragraphs for myself.

Townsend Decl. Ex 1 (ECF No. 52-1) (emphasis in original).  This constitutes troubling

evidence of bad faith that cannot be ignored and is plainly sufficient to justify discovery.[4]

Defendants contend that "[i]n response to the FOIA analyst's concerns, the materials

from this division were reprocessed." Defs.' Opp. at 9.  Yet Defendants offer no evidentiary

support for that assertion.  *See id.*  Defendants do not even inform the Court when that

reprocessing occurred.  And, critically, Defendants do not state whether or not any of the *specific*

records that were the subject of the FOIA analysts' concerns continue to be withheld and, if so,

---

[3] https://www.foia.gov/data.html (select "Department of Defense", choose DIA, then select
"Processing Time").

[4] Plaintiff notes that under the terms of the current Executive Order governing classification, it is
prohibited for information to be classified to, *inter alia*, "(1) conceal . . . administrative error;"
(2) prevent embarrassment to a person, organization, or agency; . . . [or] (4) prevent or delay the
release of information that does not require protection in the interest of national security."  Exec.
Order No. 13526, 75 F.R. 707.

on what grounds.  *See id.*  As a result, neither Plaintiff nor the Court, at present, can fully

evaluate whether the concerns raised by the DIA's FOIA analyst were addressed.

In addition, Defendants fail to seriously address the fact, pointed out in Plaintiff's

Motion, that unclassified records (or versions thereof) that were produced to Plaintiff at the

administrative stage have subsequently been withheld in litigation.  *See* Pl.'s Mot. at 14–15; *cf.*

Defs.' Opp. at 5 (stating DIA "has produced all responsive, non-exempt records to Plaintiff.").

While it is not unusual for additional records to be released after a FOIA lawsuit has been filed,

it is certainly atypical for an agency—as appears to be the case here—to later withhold records

that had been previously released to the requester.  Defendants fail to explain the discrepancies

identified by Plaintiff, offering nothing but vague, generalized assertions.  This evidence

provides additional support for Plaintiff's request for leave to propound limited written

discovery, as set forth in Plaintiff's Motion.  *See* Pl.'s Mot. at 14–15.

Defendants' opposition afforded them an opportunity to attempt to rebut Plaintiff's

evidence of agency bad faith by providing their own evidence to the Court, just as the

Government did in opposing the motion for discovery at issue in *CREW*.  *See* Defendants'

Opposition to Plaintiff's Motion for Discovery & Attachments 1–3 (declarations of James M.

Kovakas, Melanie Ann Pustay, and H. Marshall Jarrett), Mar. 10, 2016, *CREW*, No. CIV. 05-

2078 (EGS), ECF No. 13 & 13-1–13-3.  Defendants did not do so.  Accordingly, and for the

reasons set forth in Plaintiff's Motion and herein, Plaintiff's request for leave to propound four

interrogatories aimed at identifying the specific records referred to in internal agency

communications as being improperly withheld should be granted.

B. <u>Discovery is warranted given contrary evidence in the record.</u>

In order for records to be properly withheld under Exemption 1, both substantive and procedural requirements must be met.  First, the information must fall within the scope of material that may be classified pursuant to the relevant executive order.  5 U.S.C. § 552(b)(1)(A). Second, the information must be "<u>in fact</u> properly classified pursuant to such Executive order[.]" *Id.* at § 552(b)(1)(B) (emphasis added).  Here, Plaintiff's proposed discovery is aimed primarily at determining whether records that were withheld as classified in response to his First FOIA Request are, in fact, classified.  This information is not only relevant, but necessary for both Plaintiffs and the Court to evaluate the propriety of Defendants' withholdings given the inconsistent evidence in the record.  *See* Pl.'s Mot., at 12–13 & *id.*, Townsend Decl. Ex. A.

As DIA's internal e-mails show, the concern raised by the agency's FOIA analyst was not that records had been <u>improperly</u> classified, but that <u>unclassified</u> records were being withheld under Exemptions 1 and/or 3.  *See id.*  (stating, *inter alia*, "[s]ome of the documents being denied in full contain unclassified/FOUO paragraphs . . . .  I've viewed a few of the *denied in full* documents and saw the unclassified paragraphs for myself." (italics in original)).  Moreover, even assuming, *arguendo*—as Defendants ask the Court to do without any evidentiary or factual support, *see* Defs.' Opp. at 9—that the unclassified material that the agency's FOIA analyst flagged as having been improperly withheld was later classified, Plaintiff (and the Court) should be provided evidence showing that was what occurred.  The Court has an independent obligation to review all claims of exemptions—including Exemptions 1 and 3—*de novo*.  5 U.S.C. § 552(a)(4)(B)*; see also*, *e.g.*, *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217–225 (D.C. Cir. 1987) (holding the agency's proffered evidence was insufficient "for the de novo review that FOIA mandates for Exemption 1 claims").  Neither Plaintiff nor the Court can evaluate the

propriety of Defendants' withholdings without knowing which records the agency's FOIA analyst was referring to, whether those records are still being withheld and, if so, on what grounds—information sought by their four proposed interrogatories.

In their opposition, Defendants' largely ignore the purpose of Plaintiff's proposed discovery, as well as its limited nature. First, Plaintiff does not, contrary to Defendants' arguments, seek to delve into agency processes or its personnel's private thoughts about why records should or should not be withheld. *See* Defs.' Opp. at 9; *cf. Ajluni v. F.B.I.*, 947 F. Supp. 599, 607–8 (N.D.N.Y. 1996) (denying discovery for, among other things, agency procedures by which exemptions are applied because the agency's affidavits were sufficient and the court conducted an *in-camera* review). For that reason, Defendants' reliance on *Evans v. CIA*, 11-cv-02544 (D. Colo., 2014), is unhelpful. In that case, a *pro se* plaintiff appears to have sought discovery to understand the reasons for what the plaintiff perceived to be an inconsistency between a public statement by the then-CIA Director and the agency's response to his FOIA request. *See id.* at *2. Here, in contrast, Plaintiff's four proposed interrogatories seek purely factual, *Vaughn*-index type information: which records did the DIA's FOIA personnel identify as being improperly withheld, and have those records been released to Plaintiff. *See* Pl.'s Mot. at 13 & Townsend Decl. Ex. 1.

*Goldberg v. Department of State*, 818 F.2d 71 (D.C. Cir. 1987), relied upon by Defendants, is also inapt. The issue in *Goldberg* was whether records that had originally been designated unclassified were later properly classified. *See id.* The district court granted summary judgment for the agency on the correctness of the agency's classification decision. *Id.* at 74. In affirming that ruling, the D.C. Circuit rejected the requestor's argument that he was

entitled to a trial on whether or not the subsequent classification determination was proper.  *See*

*id.* at 81.  The Court noted that

> In order to controvert a reclassification decision, a FOIA petitioner must do more than point to evidence that the information sought was at some previous time classified differently.  His contrary evidence must somehow undermine or call into question the correctness of the classification status of the withheld information, or the agency's explanation for the classification. The [agency affidavit in this case] carefully explained why certain portions of the documents were properly classified and Goldberg's evidence simply does not controvert those explanations.

*Id.*

Goldberg did not involve a motion for leave to conduct discovery, and nothing in the

D.C. Circuit's opinion suggests that a requestor, under the circumstances present here, is

foreclosed from obtaining discovery to determine whether responsive, previously withheld,

unclassified documents are, in fact, now classified, and/or whether they are still being withheld.[5]

The issue in *Goldberg*—the correctness of a particular classification decision—is not yet before

this Court.  *Goldberg* simply does not speak to whether Plaintiff should be granted leave to

obtain basic information about records that DIA's own FOIA analyst identified at the

administrative stage as having been unclassified and improperly withheld in full.

A far better fit to the facts here is found in *Schaffer v. Kissinger*, 505 F.2d 389 (D.C. Cir.

1974).  In that case, the D.C. Circuit reversed an order granting summary judgment in favor of

the agency and remanded the case back to the district court to allow the requester to conduct

discovery into whether certain records were, in fact, classified:

> [T]he burden is on the agency to demonstrate to the court that the documents withheld under the claim of [Exemption 1] were properly classified pursuant to executive order.  In that regard, it was the responsibility of the court below to determine whether the Red Cross reports were in fact classified 'confidential' and

---

[5] In *Goldberg*, the requester did not appear to present, as Plaintiff does here, evidence of agency bad faith.  *Compare* 818 F.2d at 78 *with* Pl.'s Mot.

whether that classification, including the timing thereof, was in accordance with
Executive Order 11652 as claimed by appellee.

Facts respecting the classification of the reports in question are solely in the control
of the State Department.  Appellant should be allowed to undertake discovery for
the purpose of uncovering facts which might prove his right of access to the
documents which he seeks.

*Schaffer*, 505 F.2d at 391 (citations omitted).

The four interrogatories proposed by Plaintiff serve this same purpose.

### III.   Defendants' proposed order misconstrues their obligations under FOIA.

Finally, even if Plaintiff's Motion is denied, the Court should reject Defendants'

proposed order, which asks the Court to order "Plaintiff [to] identify to Defendant Defense

Intelligence Agency (DIA) what withholdings he intends to challenge at summary judgment . . .

." ECF No. 54-2.  It is the agency's burden under FOIA to demonstrate the lawfulness of each of

its withholdings.  5 U.S.C. § 552(a)(4)(B) (placing burden on agency to justify its withholdings

and requiring *de novo* review); *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,

489 U.S. 749, 755 (1989) ("FOIA expressly places the burden 'on the agency to sustain its

action' . . . ." (citing same)); *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986)

(stating that an agency "must demonstrate to a reviewing court that records withheld are clearly

exempt."); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)

(stating that "when an agency seeks to withhold information it must provide a relatively detailed

justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of a withheld document to which they apply").

Here, through their proposed order, Defendants impermissibly attempt to shift their burden to

Plaintiff by asking the Court to require him to identify which withholdings he "intends to

challenge[,]" instead of acknowledging their burden to justify <u>all</u> withholdings.  *See id.*  Though

Plaintiff can and may, of course, elect not to challenge some of Defendants' withholdings at the summary judgment stage, that choice does not relieve Defendants of their burden to demonstrate that their asserted exemptions apply.  *See, e.g., Tokar v. U.S. Dep't of Justice*, No. CV 16-2410 (RC), 2018 WL 1542320, -- F.Supp. 3d --, at \*7 n.3 (D.D.C. Mar. 29, 2018) (noting that "a Court may not grant summary judgment [as to a particular withholding] simply because the withholding was not challenged" by the requester (citations omitted)).

In any event, even if Plaintiff was required to immediately identify "what withholdings he intends to challenge[,]" Defs.' Proposed Order, ECF No. 54-2, he would be unable to do so. Defendants have not provided Plaintiff with a complete and final *Vaughn* index identifying which records they are withholding in full or in part, and the basis for those withholdings.  The partial, draft Vaughn index previously provided to Plaintiff, among other things, includes none of the agency's witholdings with respect to any e-mail records.  Plaintiff cannot identify which withholdings he intends to challenge when Defendants have yet to identify all their withholdings.

In sum, even if Plaintiffs' Motion seeking bifurcated briefing and leave to conduct limited discovery is denied by the Court, Defendants' proposed order should be rejected.

## **CONCLUSION**

For the foregoing reasons and those set forth in his Motion, Mr. Khatchadourian respectfully requests that the Court (1) set a bifurcated briefing schedule for summary judgment proceedings in this matter, and (2) grant him leave to serve on Defendants the four proposed interrogatories that were submitted with his Motion (ECF No. 52-2).


Dated: April 20, 2018                                    Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
DC Bar. No. 1026115
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org

*Counsel for Plaintiff*