## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAFFI KHATCHADOURIAN     )
                           )
      *Plaintiff,*        )
                           )
v.                      )     Case No. 1:16-cv-311-RCL/DAR
                           )
DEFENSE INTELLIGENCE AGENCY,     )
*et al.,*                     )
                           )
     *Defendants.*     )

## MEMORANDUM OPINION

This action arises from the production and retention of records pursuant to plaintiff Raffi Khatchadourian's request for disclosure of records held by the Defense Intelligence Agency ("DIA") under the Freedom of Information Act ("FOIA"). Defendants DIA and Department of Defense ("DOD") filed for summary judgment (ECF No. 64) in August of 2018. In April of 2019, Mr. Khatchadourian filed a summary judgment motion (ECF No. 78) as well as a motion for *in camera* review (ECF No. 79).

Plaintiff argues that (1) DIA narrowly construed his request in contravention of FOIA; (2) DIA's search was inadequate; (3) defendants' *Vaughn* Index and declarations are facially inadequate and conclusory; (4) defendants' inconsistencies and conclusory justifications for withholdings under Exemption 1 preclude summary judgment in defendants' favor; (5) defendants' inconsistencies and conclusory justifications for withholdings under Exemption 3 preclude summary judgment in defendants' favor; (6) defendants do not demonstrate that the deliberative process applies to any of DIA's Exemption 5 withholdings; (7) defendants' conclusory justifications for DIA's Exemption 7 withholdings preclude summary judgment in favor of defendants, and (8) defendants do not meet their burden to show that they properly

segregated non-exempt information from otherwise exempt records. As a remedy for these alleged problems, plaintiff moves for *in camera* review of a select number of records, which defendants argue is inappropriate.

The Court referred all pending motions to Magistrate Judge Deborah A. Robinson in February of 2018. In February of 2020, Magistrate Judge Robinson issued a Report & Recommendation (ECF No. 87) finding that (1) DIA properly construed the scope of Plaintiff's request; (2) DIA's search was adequate; (3) defendants' *Vaughn* Index and declarations are not facially inadequate; (4) defendants demonstrate that all records withheld under Exemption 1 contain classified information, but do not adequately explain how DIA segregated non-exempt information from such records; (5) defendants demonstrate that some records include information properly withheld under Exemption 3, but do not adequately explain how DIA segregated non-exempt information from such records; (6) defendants do not demonstrate that the deliberative process applies to any of DIA's Exemption 5 withholdings, nor do defendants adequately explain how DIA segregated non-exempt information from such records, and (7) DIA properly invoked Exemption 7 for the sole record it withheld under this exemption. Magistrate Judge Robinson recommended that defendants' motion for summary judgment be granted as to (1) the adequacy and scope of DIA's search for responsive records; (2) the overall adequacy of defendants' *Vaughn* Index and associated declarations; and (3) defendants' Exemption 7 withholdings. She recommended that plaintiff's motion for summary judgment be denied as to those issues but granted as to all public news article records withheld under Exemption 3 and 10 U.S.C. § 424 (meaning that defendants' motion for summary judgment should be denied as to that issue). The report further recommends denying without prejudice defendants' motion for summary judgment as to (1) defendants' exemptions 1, 3, and 5 withholdings to allow

2

supplementation of the record with respect to segregability; (2) defendants' Exemption 3 withholdings to allow supplementation of the record with respect to V-106 and all records identified as lacking under 10 U.S.C. § 424; and (3) defendants' Exemption 5 withholdings to allow supplementation of the record with respect to the deliberative process privilege. Finally, Magistrate Judge Robinson recommended that plaintiff's motion for *in camera* review be denied.[1]

Upon consideration of the underlying motions, the report, plaintiff's objection to the report (ECF No. 89), defendants' response to that objection (ECF No. 90), and plaintiff's reply (ECF No. 91), the Court will adopt the report in its entirety. Plaintiff's objections are without merit. Defendants never filed any objection to the report, and they ask the Court to adopt the report in its entirety. As explained below, the Court will **GRANT IN PART AND DENY IN PART** plaintiff's and defendants' motions for summary judgment. The Court will **GRANT** defendants' motion for summary judgment and **DENY** plaintiff's motion for summary judgment with respect to (1) the adequacy and scope of DIA's search for responsive records; (2) the overall adequacy of defendants' *Vaughn* Index and associated declarations; and (3) defendants' Exemption 7 withholdings. With respect to Exemption 1, the Court will **ORDER** defendants to supplement the record regarding the segregability analysis. With respect to Exemption 3, the Court will **ORDER** defendants to supplement the record with respect to V-106 and all other records withheld under 10 U.S.C. § 424 on the basis of "revealing DIA functions." The Court will further **ORDER** defendants to supplement the record regarding the Exemption 3 segregability analysis. With respect to Exemption 5, the Court will **ORDER** defendants to supplement the record regarding the deliberative process privilege. The Court will further

---

[1] District Court judges apply the *de novo* standard of review to any part of a Magistrate Judge's report to which there has been a proper objection. Fed. R. Civ. P. 72(b)(3).

**ORDER** defendants to supplement the record regarding the Exemption 5 segregability analysis. Finally, the Court will **DENY** plaintiff's motion for *in camera* review.

## BACKGROUND

Plaintiff Raffi Khatchadourian is a journalist seeking to report on the release of United States military secrets by the website Wikileaks. Complaint (ECF No. 1) ¶ 4. Defendant DIA, as a component of DOD, has a mission "to collect, analyze, and provide intelligence on the military capabilities of foreign military forces[.]" Declaration of Alesia Y. Williams in Support of Defendants' Motion for Summary Judgment (ECF No. 64-1) ¶ 3. On July 28, 2010, the Secretary of Defense convened the Information Review Task Force ("IRTF") to conduct a damage assessment of one of the largest unauthorized leaks of U.S. government information in history. *Id.* ¶ 5. In its final report (completed on June 15, 2011), the IRTF provided a detailed analysis of the U.S. government information systems impacted by the leak. *Id.* This assessment contained classified information, including (among other things) highly specific and detailed information regarding military plans and operations, clandestine intelligence relationships with other countries, intelligence sources and methods, and an assessment of the potential harm that the disclosures posed to U.S. and coalition forces.

On February 16, 2012, plaintiff submitted a FOIA request to DIA seeking:

> 1) Any documents relevant to the creation, scope, structure, and responsibilities of the Information Review Task Force . . .
> 2) Any conclusions, reports, or assessments (provisional and/ or final) that have been generated by the IRTF.
> 3) Records of all previous FOIA requests for information pertinent to the IRTF.

Khatchadourian Declaration Exhibit 1 (ECF No. 78-5) at 4.

On September 12, 2013, DIA identified six records responsive to plaintiff's request.[2] Defendants' Statement of Material Facts (ECF No. 64) ¶ 3. Of the six records, one was withheld in full, two were released in full, and three were released in part. *Id.* Plaintiff appealed DIA's initial response on November 12, 2013. *Id.* ¶ 5. Plaintiff filed his complaint on February 22, 2016. *See* ECF No. 1. Between July 18, 2016 and October 25, 2016, DIA provided additional responsive records in several batches in response to plaintiff's 2013 appeal. ECF No. 64-1 ¶ 13.

During the pendency of this litigation, in response to plaintiff's assertion that he expected the first prong of his request to have included a search of DIA's email system, DIA began to design a search protocol to locate responsive email records. *Id.* ¶¶ 15-16. DIA and plaintiff worked together through several rounds of searches, narrowing the scope of potentially responsive emails to be reviewed from 1.8 million to 118,000, then from 118,000 to 18,000. *Id.* ¶¶ 15-18. DIA then used two 300-email samples to determine the extent to which the 18,000 emails contained responsive records. *Id.* ¶¶ 15-19, 21. DIA indicated that 2-4% of the emails would be responsive and nonduplicative. *Id.* ¶¶ 20, 22. DIA abandoned this process in mid-2017 and elected to use its own, unilaterally designed email search protocol. *Id.* ¶ 25. This protocol was limited to six search terms, searched within the email accounts of six people, and was restricted to a thirty-six-day period during which the IRTF was being "stood up." *Id.* ¶¶ 27-29. DIA also searched through "a newly identified computer database." *Id.* ¶ 30. This search yielded potentially responsive records consisting of 1,750 emails and 650 records from the database. *Id.* ¶ 31. Upon processing, DIA indicated that only five of those emails were responsive with an additional seven responsive attachments. ECF No. 50 at 3.

---

[2] The Court will only include the portions of Defendants' Statement of Material Facts or the Williams Declaration which plaintiff does not dispute. *See* Plaintiff's Combined Statement of Material Facts as to Which There Is No Genuine Issue and Response to Defendants' Statement of Material Facts (ECF No. 78-2).

Plaintiff also made a second request to DIA on October 20, 2015 seeking all processing notes and communications regarding his first request and his appeal of DIA's initial response to it. ECF No. 64-1 ¶ 10. DIA answered plaintiff's second request on June 16, 2016, identifying thirty-three records, twelve of which were released in full, and twenty-one of which were released in part. *Id.* ¶ 12.

Including disclosures made after the litigation commenced, DIA has identified 850 responsive records, totaling over 5,000 pages. *See id.* at 38-809 ("*Vaughn* Index"); Amended *Vaughn* Index (ECF No. 75-1) (updating *Vaughn* Index for "Part 2" only). Of the responsive records which DIA identified, the agency withheld portions of or the entirety of certain records under Exemptions 1, 3, 5, 6, and 7. *See Vaughn* Index at 809; Supplemental Declaration of Alesia Y. Williams (ECF No. 84-1) ¶¶ 32-33.

## LEGAL STANDARDS

### I. FOIA

FOIA provides for the disclosure of certain government records to anyone who requests them. 5 U.S.C. § 552. "FOIA mandates a 'strong presumption in favor of disclosure.'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). As a result, "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). An agency withholding any material pursuant to an exemption under FOIA "bears the burden of showing that withheld material falls within the asserted exemption[.]" *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).

## II. Summary Judgment

A court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 335 (D.C. Cir. 2011). Courts typically decide FOIA cases on motions for summary judgment. *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Where the action is challenging an agency's withholding of certain records, "the agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested . . . is wholly exempt from [FOIA's] disclosure requirements." *Shapiro v. Dep't of Justice*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014). An agency will meet its burden if any combination of its *Vaughn* Index, affidavits, or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Additionally, a court "must make specific findings" as to whether any "reasonably segregable portion of a record" is non-exempt and releasable "[b]efore approving the application of a FOIA exemption[.]" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citing 5 U.S.C. § 552(b)).

## ANALYSIS

### I. Adequacy of DIA's Search

An agency that has received a FOIA request must "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.

Cir. 1990) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)) (noting that the actual recovery of every existing document is not significant; the relevant issue is "whether the government's search for responsive documents was adequate"). An adequate search is one that is reasonable, and the agency must demonstrate that its search was reasonable "beyond material doubt." *Id.* For the court to grant an agency's motion for summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that the agency is not required to search every record system, but must search the systems "likely to turn up the information requested"). "There is no requirement that an agency search every record system." *Id.* An agency is, however, required to "explain in its affidavit that no other record system was likely to produce responsive documents." *Id.* To meet this standard, an agency can produce "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby*, 920 F.2d at 68). An agency meeting this burden is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and quotation marks omitted).

Plaintiff challenges the adequacy of DIA's search in three ways.[3] First, plaintiff argues that DIA failed to construe plaintiff's first request liberally. *See* ECF No. 78-1 at 22-24. Second,

---

[3] In his motion for summary judgment, plaintiff originally asserted a fourth way—that DIA "does not aver that all files likely to contain responsive materials were searched in response to Plaintiff's FOIA requests." ECF No. 78-1 at 9. Defendants subsequently filed a supplemental declaration in which DIA avers that all such files were searched. *See* ECF No. 84-1 ¶ 10. Plaintiff does not argue in his Reply that this is insufficient, and the Court has no basis to

plaintiff argues that DIA's response to the first request was inadequate because DIA did not search all locations likely to contain responsive records. *See id.* at 12-18. Third, plaintiff argues that DIA overlooked and failed to pursue clear leads which would have led to responsive records. *See id.* at 18-22. Defendants maintain that DIA has searched all locations likely to contain responsive, nonduplicative records. *See* ECF No. 84-1 ¶ 10.

## A. Defendants Properly Construed Plaintiff's Request.

Plaintiff argues that DIA failed to meet its "duty to construe a FOIA request liberally." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); ECF No. 78-1 at 22-24. If "an agency becomes reasonably clear as to the materials desired," the agency must provide them even if the request is not a "model of clarity." *Truitt*, 897 F.2d at 544; *see also LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (holding that where requester sought records "pertaining to" a matter while listing specific records, the agency should not have limited its search to only the specific records). *But see Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 388-89 (D.C. Cir. 1996) (holding that where requester sought "all records in agency files," the agency was not obliged to search other offices).

In response to plaintiff's first request, DIA interpreted the first category of records seeking "documents relevant to the creation, scope, structure, and responsibilities" of the IRTF to mean "foundational documents" of the IRTF including, *inter alia*, "mission statements, mission requirements, leadership chain of command, organizational charts, resourcing, and processes[.]" ECF 64-1 ¶ 6. DIA interpreted the second category of records seeking "[a]ny conclusions, reports, or assessments" by the IRTF "as a relatively narrow request for documents . . . such as

---

conclude that defendants have not met this requirement under FOIA. *See generally* Combined Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and/or Partial Summary Judgment and Plaintiff's Motion for *In Camera* Review (ECF No. 86).

memoranda, desk notes, briefings, and interim assessments" of the IRTF but not of any

constituent members of IRTF. *Id.* DIA interpreted the third category of records to include

administrative records related to past FOIA requests. *Id.* Plaintiff notes that defendants

themselves characterize the search of the second category of records as "narrow" and points to

the fact that DIA found that five of 1,750 emails were responsive as evidence of this narrow

reading. *See id.*

Magistrate Judge Robinson found that defendants properly construed plaintiff's request,

explaining:

> While the agency did interpret Plaintiff's request for reports "as a relatively narrow request for documents," this was a reasonable interpretation of a narrow request for "[a]ny conclusions, reports, or assessments (provisional and/ or final) that have been *generated by the IRTF.*" Williams Declaration ¶ 6; Initial Request (emphasis added). It was reasonable to interpret this as a request for records held by the IRTF itself rather than any constituent member. *See Kowalczyk*, 73 F.3d at 389 ("If the agency may reasonably interpret the request to be for records in a specific office or offices only—the office to which the request was sent or any office(s) named in the request—then upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them."). The agency reasonably interpreted the first prong of the request differently because Plaintiff requested "[a]ny documents relevant to" the scope and creation of the IRTF, which would necessarily involve a search of more than just records generated by the IRTF. Plaintiff limited the second prong of his request to records "generated by the IRTF." Just as it was reasonable for the agency in *Kowalczyk* to interpret a request for agency records as a limited inquiry, DIA's interpretation here is reasonable. Moreover, while the percentage of responsive records produced is low, the undersigned cannot ascribe that result to any unduly narrow interpretation of the first prong of the initial request. DIA's interpretation of the scope of both prongs of Plaintiff's first request are therefore reasonable.

ECF No. 87 at 9-10.

The Court agrees with this analysis. Plaintiff objects, maintaining that DIA misconstrued

his request. *See* ECF No. 89 at 4-11. Plaintiff is incorrect. The first prong requested "[a]ny

documents relevant to" the scope and creation of the IRTF, whereas the second request was more

limited to records "generated by the IRTF." ECF No. 78-5. The difference in wording would lead a reasonable person to conclude that the scope of the first prong is broader than the scope of the second prong. It is true that agencies have a "duty to construe a FOIA request liberally." *Nation Magazine*, 71 F.3d at 890. This does not, however, mean that agencies are prohibited from reasonably interpreting FOIA requests. Plaintiff could have worded his request however he wanted, and he chose to word it in such a way that strongly suggests a difference between the scope of the first and second prongs. Therefore, the Court finds that defendants properly construed his request.

**B. DIA Conducted an Adequate Email Search for Records Relevant to the Creation, Scope, Structure, and Responsibilities of the IRTF.**

In conducting a search for emails in response to the first prong of plaintiff's initial request, DIA initially worked with plaintiff to craft search terms and other parameters. *See* ECF No. 64-1 ¶¶ 14-24. The first effort yielded 1.8 million potentially responsive emails containing the words "IRTF" or "Information Review Task Force." *Id.* ¶ 15. A second effort with a cut-off date of June 5, 2013 yielded 118,500 potentially responsive emails. *Id.* DIA conducted a further search which was restricted to emails created between May 1, 2010 and June 5, 2013 with more specific search terms beyond "IRTF" or "Information Review Task Force." *Id.* ¶ 17. From this third search, which produced over 18,000 emails, DIA conducted tests to determine whether a sample of the emails would produce emails responsive to plaintiff's request. *Id.* ¶¶ 18-20. DIA indicated that two samples revealed, respectively, that 2%-4% of emails were responsive and nonduplicative. *Id.* ¶¶ 20, 22. DIA processed these responsive records, but in light of the low response rate, it sought an alternative search protocol without plaintiff's involvement. *Id.* ¶¶ 20, 22, 25. Through interviews with people familiar with the origins of the IRTF, DIA concluded

that the best means of identifying responsive emails was to search the email repositories for six "key players" involved with the IRTF's founding. *Id.* ¶¶ 25-29. The search was further limited to particular search terms for emails created between July 25, 2010 and August 30, 2010, dates upon which DIA believed the foundation of the IRTF was laid. *Id.* ¶¶ 28-29. DIA further searched "a newly identified computer database" with these same terms. *Id.* ¶ 30. This search resulted in approximately 1,750 potentially responsive emails uncovered from searching the email repositories and approximately 650 potentially responsive records from the database. *Id.* ¶ 31. DIA subsequently processed these records. *Id.*

Plaintiff argues that DIA must review all potentially responsive emails through its original process and requests that the court order DIA to review the 118,500 emails produced through the second search. ECF No. 78-1 at 14. Having identified potentially responsive records, plaintiff argues that DIA cannot offer a "flat refusal" to search them. *Id.* Further, plaintiff argues that the time period of July 25, 2010 to August 30, 2010 was unduly narrow. *Id.* at 17-18.

Magistrate Judge Robinson found that DIA conducted an adequate email search for records relevant to the creation, scope, structure, and responsibilities of the IRTF, explaining:

> [T]he agency's email search was "reasonably calculated to uncover all relevant documents." *Truitt*, 897 F.2d at 542. DIA was tasked with finding "documents relevant to the creation, scope, structure, and responsibilities of the Information Review Task Force[.]" *See* Initial Request. As previously discussed, DIA properly interpreted this as a request for foundational documents related to the IRTF. *See* Williams Declaration ¶ 6. Defendants exhaustively detail each step of how they determined that its search would be "likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. Through emails with six DIA personnel, DIA determined who would be likely to have produced or received such records, the time frame during which the records were likely created, and what search terms would reveal responsive records. *See* Williams Declaration ¶¶ 25-29. It was reasonable to limit the search to those most involved with the creation of the IRTF because those people—instead of all DIA employees—would be most likely to possess responsive records. *Id.* ¶ 27. It was also reasonable to limit the time frame to between July 25, 2010 and August 30, 2010 because that is when decisions about the IRTF's creation were made. *Id.* ¶ 28. The search terms, which Plaintiff does not appear to

12

directly challenge, were reasonable because they included, *inter alia*, the initial working name of the IRTF and words that relate to the founding of the IRTF, such as "scope." *Id.* ¶ 29. Based on the level of detail that DIA provides and the reasonableness of DIA's search, DIA is accorded a presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200.

In an effort to overcome this presumption, Plaintiff points to DIA's previous searches, which revealed considerably more potentially responsive records. *See* Plaintiff's Memorandum at 14. Broader search criteria may have produced more responsive records, but this is "speculative." *SafeCard Servs.*, 926 F.2d at 1200. DIA searched the same email repository in its final effort as it did in its previous efforts, just with tailored criteria that were more likely to produce responsive records. In addition, DIA searched a "database." Williams Declaration ¶ 30. A theoretical needle in a considerable haystack is insufficient to rebut a presumption of good faith. *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (holding that, where "agency reasonably chose to search the most likely place responsive documents would be located[,]" requiring a "search through millions of documents is not reasonable and therefore not necessary"). DIA's search of emails with respect to the first prong of Plaintiff's initial request was reasonable and, as a result, adequate.

ECF No. 87 at 11-13.

The Court concurs with this analysis. Plaintiff objects, arguing that the possibility of more responsive records being produced was not merely speculative. *See* ECF No. 89 at 6. DIA's search methodology, however, was reasonably calculated to uncover the foundational documents for the IRTF, and it was reasonable to hone in on the emails of those most involved with the creation of the IRTF and on the time frame when decisions about the IRTF's creation were made. The search terms were also appropriate. Plaintiff argues that DIA's refusal to process the approximately 118,500 emails identified as potentially responsive "smacks of bad faith." ECF No. 89 at 5. On the contrary, the agency is afforded a presumption of good faith, and it is plaintiff's burden to overcome that presumption. He has been completely unable to do so. Agencies are only required to process records that are actually responsive to FOIA requests. In their reply to plaintiff's objection, defendants cite recent case law wherein the Court rejected the notion that an agency must review "every document that resulted from" broad search terms.

13

*Schaerr v. U.S. Dep't of Justice*, 2020 U.S. Dist. LEXIS 13772 at *57-58 (D.D.C. Jan. 28, 2020) (explaining that the Department of State did not need to search through every one of the thousands of documents that were only potentially responsive). Essentially, DIA did what FOIA requires of it, and neither Mr. Khatchadourian nor this Court can force it to do more than what FOIA mandates.

### C. DIA Did Not Need to Conduct an Email Search for Conclusions, Reports, or Assessments Generated by the IRTF.

Plaintiff also faults DIA for not searching through its email repository in response to the second prong of plaintiff's initial request. *See* ECF No. 78-1 at 16-17. Magistrate Judge Robinson found that DIA did not need to conduct such a search, stating that because DIA's interpretation of the second prong of plaintiff's first request was reasonable, "DIA did not need to search through its email repositories to adequately provide 'conclusions, reports, or assessments (provisional and/ or final) that have been generated by the IRTF[.]' Initial Request." ECF No. 87 at 13. Magistrate Judge Robinson further explained:

> Defendants maintain that the databases maintained by the IRTF and DIA "were intended to be the repositories for all products generated by the IRTF[.]" Supplemental Williams Declaration ¶ 18. Because Plaintiff sought records "generated by the IRTF," it was reasonable to conduct a search of these databases without a search of the email repositories of the IRTF's constituent members. *See id.* Plaintiff points to twice daily "Email briefs" that were produced by the IRTF as evidence that it was unreasonable for DIA to rely solely on its databases. *See* Plaintiff's Memorandum at 17. Defendants maintain, however, that these email briefs were actually in the database and included in the *Vaughn* Index. *See* Supplemental Williams Declaration ¶ 13. While Plaintiff characterizes this as an effective concession that emails are likely to contain responsive records, Plaintiff fails to rebut the presumption of good faith accorded here. The fact that emails were part of the IRTF databases indicates that the databases were likely to contain responsive records, not that DIA's email repositories contained any further responsive records in response to the second prong of Plaintiff's initial request.

ECF No. 87 at 13.

The Court agrees with this analysis. Plaintiff objects, continuing to argue that DIA needed to search individuals' email accounts. *See* ECF No. 89 at 8. As previously explained, however, the distinction between the wording of plaintiff's first and second requests made DIA's interpretation reasonable. In light of the wording, DIA did not need to conduct a broader search than it did, and DIA acted reasonably.

### D. DIA Did Not Fail to Follow Up on Clear Leads.

Plaintiff argues that the search was inadequate because DIA ignored "clear and certain leads" that would have led to responsive records. *See Kowalczyk*, 73 F.3d at 389. An agency's duty is to "conduct a search reasonably calculated to uncover all relevant documents." *Id.* (quoting *Truitt*, 897 F.2d at 542). This duty extends to "leads that emerge during the inquiry[,]" not just those leads identifiable at the outset of a search. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). It is "rare" that "an agency record contains a lead so apparent that the [agency] cannot in good faith fail to pursue it." *Kowalczyk*, 73 F.3d at 389. To show that a search ignored a clear lead, a FOIA plaintiff must meet an "exacting standard" in overcoming "a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Reporters Comm. for Freedom of Press*, 877 F.3d at 407; *see also Negley v. Fed. Bureau of Investigation*, 169 Fed. App'x. 591, 594 (D.C. Cir. 2006).

Plaintiff maintains that DIA ignored clear leads in failing to search (1) the offices or files of senior IRTF leadership, (2) Intellipedia, "a Wikipedia-like online platform" for government agencies, (3) IRTF's electronic request for information ("RFI") portal, and (4) records of their Congressional liaison. *See* ECF No. 78-1 at 18-22.

*1. The Offices and Non-Email Records of IRTF Senior Leadership Are Not Clear Leads.*

Plaintiff points out that DIA did not, in its original declaration, state that it searched the offices or files of IRTF's senior leadership, including IRTF Director Robert Carr, IRTF Chief Scott Liard, and IRTF Deputy Chief John Kirchhofer. *See* ECF No. 78-1 at 16. In response, defendants supplemented the original declaration to reflect that DIA did, in fact, search their emails. *See* ECF No. 84-1 ¶ 14. Plaintiff still maintains that DIA should have searched "the offices or non-email files of" IRTF's senior leadership. ECF No. 86 at 8. Plaintiff points to three indications that the non-email records of these individuals contain responsive, nonduplicative records: (1) IRTF Deputy Chief Kirchhofer's testimony during the court-martial trial of Chelsea Manning that he received "at least 100 information papers" generated by the IRTF, (2) IRTF Director Carr's testimony that he "received weekly reports from the IRTF[,]" and (3) records produced in another, related litigation that DIA did not produce to Plaintiff. *Id.* at 19-20 (citing Townsend Declaration Exhibit 1, Exhibit 4 at 168 (ECF No. 78-3); ECF No. 78-2 ¶¶ 105-106.

Magistrate Judge Robinson found that the offices and non-email records of IRTF senior leadership are not clear leads, explaining:

> IRTF Deputy Chief Kirchhofer's testimony does not indicate that his office is likely to contain responsive, nonduplicative records. Plaintiff overlooks the explanation offered by DIA that these "information papers" likely have been processed already. *See* Supplemental Williams Declaration ¶ 15. IRTF used an "Information Memorandum" format to "report developments in its review and assessment of the impact of the unauthorized disclosure of information resulting from the leaked documents." *Id.* This description is consistent with the testimony of IRTF Deputy Chief Kirchhofer, who was not totally certain what these "information papers" were formally called. *See* Townsend Declaration Exhibit 4, at 168 ("[I]nformation paper I think is what we called them"). These were analyses from staff, which were part of the "audit trail of [the IRTF's] analytical efforts." *Id.* DIA's explanation that this is "more likely . . . a reference to the Information Memorandum format" is reasonable in this context. Supplemental Williams Declaration ¶ 15. DIA's representations are consistent with the fact that "well over 100 of these memoranda" were included in the *Vaughn* Index. *Id.* For these reasons, it is

"speculative" that these records are within the non-email records of the constituent members of the IRTF. *Reporters Comm. for Freedom of Press*, 877 F.3d at 407.

Likewise, IRTF Director Carr's testimony does not indicate that his office is likely to contain responsive, nonduplicative records. In his testimony, IRTF Director Carr merely characterized the work of the IRTF as producing "VTC briefs" or "reports" for the Secretary of Defense. *See* Townsend Declaration Exhibit 1, at 18. Given the repeated references to "we" in his testimony, his testimony speaks to work generated by the IRTF. *See id.* DIA reasonably believed that this information would be within the IRTF databases, not necessarily in IRTF Director Carr's office.

Further, the fact that DIA produced some records to another FOIA plaintiff does not indicate that the search was deficient or that these records are within the offices of senior IRTF leadership. Any differences in production result from a difference in the terms of Plaintiff's request and the request at issue in *Leopold v. Dep't of Defense,* No. 15-cv-01105-TSC. *Compare* Williams Declaration ¶ 16 (characterizing plaintiff's request in *Leopold* as including "[a]ny and all communications" between DIA and multiple, other government agencies and personnel) *with* Initial Request (limiting the second prong of the request to records "generated by the IRTF"). The undersigned cannot ascribe any differences in production to a failure to pursue clear leads in these circumstances.

More generally, it was not error to decline to search the offices or non-email files of senior leadership. As previously discussed, DIA's search was adequate for the first and second prongs of Plaintiff's first request. Plaintiff's assertion that IRTF staff's offices and non-email records contain further responsive records are "purely speculative claims about the existence and discoverability of other documents" because Plaintiff does not show which responsive, nonduplicative records or categories of records reside in those locations. *Reporters Comm. for Freedom of Press*, 877 F.3d at 407.

ECF No. 87 at 15-17.

The Court concurs with this analysis. Plaintiff objects, continuing to argue that DIA failed to search the offices and non-email records of IRTF senior leadership. *See* ECF No. 89 at 9-11. DIA searched their emails, and as Magistrate Judge Robinson determined, plaintiff provides nothing more than pure speculation that their non-email records would result in responsive, non-duplicative documents. Therefore, DIA was under no obligation to search office and non-email records of IRTF senior leadership.

### 2. Intellipedia, IRTF's Electronic RFI Portal, and Records of the IRTF Congressional Liaison Are Not Clear Leads.

Plaintiff argues that DIA ignored three other clear leads. These three locations are variations on the same theme. For each, Plaintiff argues that DIA's production of some records indicates that responsive records are likely there. DIA produced records indicating that DIA used but did not search Intellipedia, the IRTF RFI portal, and the office of the IRTF Congressional liaison. DIA produced records indicating that the IRTF published and edited articles on Intellipedia, a platform on which the intelligence community shares and edits articles in a manner similar to Wikipedia. *See* ECF No. 78 Exhibits 7, 11, 12. DIA also produced records suggesting that the IRTF received and responded to requests for information from other government entities through its electronic RFI Portal. *See id.*, Exhibit 11. Other records indicate that IRTF interacted with Congress through its Congressional liaison because a record produced to plaintiff indicates that the Congressional liaison worked on "products" such as "Talking Points" and "Q&A[.]" *See id.*, Exhibit 20, at 288. Defendants concede that DIA did not search these locations, but maintain that Intellipedia, the RFI Portal, and the records of the IRTF Congressional liaison are unlikely to contain responsive, nonduplicative records. ECF No. 84 at 10-12.

Magistrate Judge Robinson found that these were not clear leads, explaining:

> For all three locations, Plaintiff fails to meet this Circuit's "exacting standard" because Plaintiff's assertions about the existence of responsive, nonduplicative records in these three locations are "speculative claims[.]" *Reporters Comm. for Freedom of Press*, 877 F.3d at 407. There is little doubt that these locations contained responsive records. Still, Plaintiff does not rebut Defendants' contention that DIA's email and database searches were likely to uncover the records contained in these locations. With respect to Intellipedia and the RFI Portal, Plaintiff relies heavily on one record to show that these locations contain responsive records. A document partly titled "Knowledge Management Lessons Learned" details the process by which DIA produced information through the RFI portal and Intellipedia. *See* Townsend Declaration Exhibit 11, at 206, 214-20. This record

reveals a central process within the IRTF by which the IRTF produced information through the RFI Portal and Intellipedia. Given the centralized nature of these processes and the IRTF more broadly, Defendants' suggestion that DIA's search protocol was likely to locate these records is convincing. *See* Supplemental Williams Declaration ¶ 18. It is likely that these records were within the IRTF's central databases.

With respect to records within the files of the IRTF Congressional liaison, it is more likely than not that DIA's search would uncover the responsive records that Plaintiff claims are missing. *See* Supplemental Williams Declaration ¶ 20 (identifying documents titled "Talking Points"). Based on the limited information provided by DIA and Plaintiff, it is possible that responsive, nonduplicative records are within all three locations. However, Defendants are entitled to summary judgment on these questions because this possibility is speculative and these leads are not "clear and certain." *Kowalczyk*, 73 F.3d at 389.

ECF No. 87 at 17-18.

The Court concurs with this analysis. Plaintiff objects, asking this Court to order defendants to pursue those three supposedly clear leads. The Court, however, finds that these are not clear leads. Plaintiff provides nothing more than speculation to show that searching these locations would uncover responsive documents. Therefore, DIA is not obligated to search those additional three locations.

## II. Defendants' *Vaughn* Index and Declarations Are Not Facially Inadequate.

An agency withholding information under FOIA must provide its justifications with "[s]pecificity." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). Through an agency's *Vaughn* index and supporting affidavit or declaration, the agency must offer "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). For every record withheld, the agency "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves

protection." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). A court will find an agency's justifications insufficient if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *King*, 830 F.2d at 219 (quoting *Allen v. Cent. Intelligence Agency*, 636 F.2d 1287, 1291 (D.C. Cir. 1980)).

In reviewing the adequacy of an agency's justification, a court must "focus on the functions of the *Vaughn* index, not the length of the document descriptions, as the touchstone of [its] analysis." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). As a result, in certain circumstances involving voluminous records, an agency may claim exemptions on a categorical basis. *See id.* at 148 (holding that a "decision to tie each document to one or more claimed exemptions in its index and then summarize the commonalities of the documents in a supporting affidavit is a legitimate way of serving those functions"). If an agency does not provide document-by-document justifications, a categorical approach may still be adequate if it serves the three purposes of the *Vaughn* index requirement:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Id.* at 146 (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

Plaintiff argues that the *Vaughn* Index and Williams Declaration are "patently insufficient" to justify nondisclosure. ECF No. 78-1 at 26. Plaintiff points to several documents as evidence of "endemic" insufficient justifications. *Id.* at 24. V-318, for example, is a 504-page "Document Log" whose withholding is justified only by "generic recitations that are repeated throughout Defendant's *Vaughn* Index." *Id.* at 23 (citing *Vaughn* Index at 327). In response, defendant maintains that the *Vaughn* Index adequately explains that defendant withheld V-318

pursuant to Exemption 1 because the Index explains that it contains "methods and processes used in assessing the impact of the unauthorized disclosure of information resulting from leaked documents." ECF No. 84 at 13-14. The Index also explains that Exemption 3 applies to V-318 because the document includes information concerning "[c]omputer links from a classified network[.]" *Id.* at 14. Defendants further emphasize that the Williams Declaration provides more details about each withholding. *See id.* at 14-15.

Magistrate Judge Robinson found that the *Vaughn* Index and declarations are not facially insufficient, explaining:

> 850 records totaling 5,000 pages are at issue here. This is the kind of situation where "particularity may actually impede court review and undermine the functions served by a *Vaughn* index." *Judicial Watch*, 449 F.3d at 147. The undersigned finds no fundamental flaw in Defendants providing limited information in the *Vaughn* Index and adding further rationales across categories of records through the Williams Declaration. For certain categories of information, the Williams Declaration provides the necessary detail to aid in judicial review. For example, the Declaration states that thirty-four records are exempt under Exemption 1 and Section 1.4(a) of Executive Order 13,526 because the records include "general and specific details relating to another government's military operations" and how Wikileaks disclosures affected "U.S. intelligence sources and methods and foreign policy, and future foreign government military cooperation with the United States." Williams Declaration ¶ 39; Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). Defendants withheld another thirty-eight records under Exemption 1 and Section 1.4(a) of Executive Order 13,526 because they include information "relating to the United States' military activities . . . includ[ing] specific military activities, plans, and operations" and the impact that the Wikileaks disclosures may have on U.S. foreign policy and military operations." *Id.* ¶ 40. The *Vaughn* Index provides slightly more information, including whether the record is a "Memorandum," the number of pages, a date, and the agency involved. *See e.g.*, *Vaughn* Index at 122 (V-112).

> Though Defendants do not justify each of the thirty-four records document-by-document, this level of detail is sufficient to "enable[] the trial court to fulfill its duty of ruling on the applicability of the exemption, and . . . enable[] the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Keys*, 830 F.2d at 349. In the context of Exemption 1, this court must determine, *inter alia*, whether the information consists of "military plans, weapons systems, or operations" and whether disclosure "could be expected to result in damage to the national security[.]

Executive Order No. 13,256 §§ 1.4(a), 1.1(a)(4). The Williams Declaration and *Vaughn* Index provide the detail necessary for the court to determine whether Defendants satisfied these criteria, as these justifications are specific to the Wikileaks disclosures. As a whole, the undersigned finds that Defendants' approach to the *Vaughn* Index and associated declarations are therefore not facially "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King*, 830 F.2d at 219 (citation omitted). The undersigned therefore recommends that Plaintiff's motion for summary judgment be denied to the extent Plaintiff challenges the entirety of Defendants' *Vaughn* Index and associated declarations. Instead, the undersigned will examine each exemption, one-by-one, and the adequacy of Defendants' justifications for each in turn.

ECF No. 87 at 20-21.

The Court agrees with this analysis. Plaintiff does not appear to object to this specific portion of the report and appears to have abandoned any argument about the *Vaughn* Index or declarations being facially inadequate. *See generally* ECF No. 89. Even if plaintiff did object, such an objection would be without merit. The *Vaughn* Index and accompanying declarations provide sufficient detail and therefore are not facially inadequate.

**III. All Records Withheld Under Exemption 1 Contain Classified Information and Plaintiff Cannot Show Bad Faith or Contradictory Evidence, But Defendants Fail to Demonstrate an Adequate Segregability Analysis.**

Exemption 1 protects from disclosure any information classified "under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order[.]" 5 U.S.C. § 522(b)(1). The current, operative Executive Order is Executive Order 13526, which allows classification if the following conditions are met:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

§ 1.1(a).

Section 1.4 lists categories of classified information, which includes "(a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to the national security . . . (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security; or (h) the development, production, or use of weapons of mass destruction."

Under Exemption 1, an agency "bears the burden of proving the applicability of claimed exemptions." *Am. Civil Liberties Union*, 628 F.3d at 619. In the national security context, a court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.* (quoting *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)). Courts in this Circuit "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). Accordingly, an agency will be entitled to summary judgment if the agency submits an affidavit or declaration that "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad

faith." *Id.* (citing *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)); *see also Summers v. U.S. Dep't of Justice*, 999 F.2d 570, 572-73 (D.C. Cir. 1993) (holding that a declaration is acceptable in FOIA litigation and that an affidavit is not required). These justifications will be upheld if "logical" or "plausible." *Wolf*, 473 F.3d at 375 (citations omitted).

If an agency affidavit or declaration is "conclusory," "contradicted in the record[,]" or there is "evidence in the record of agency bad faith," then summary judgment is not appropriate and a court may grant *in camera* review as a "last resort[.]" *Hayden*, 608 F.2d at 1387. A reviewing court has "'broad discretion' to decide whether *in camera* review is necessary." *100Reporters LLC v. United States Dep't of Justice*, 248 F. Supp. 3d 115, 166 (D.D.C. 2017) (citation omitted). A court, in its discretion, may also order *in camera* review of a representative sample of records, further discovery, or supplementation of agency *Vaughn* filings. *See King*, 830 F.2d at 225.

In this case, DIA withheld numerous records or information within records pursuant to Executive Order 13526 subsections 1.4 (a), (b), (c), (d), (g), and (h). *See Vaughn* Index at 809. Plaintiff argues that defendants are not entitled to summary judgment with respect to Exemption 1 because material facts suggest that some information withheld under Exemption 1 is not, in fact, classified. *See* ECF No. 78-1 at 30-32, 36-37. Plaintiff further argues that inconsistent production and internal communications within DIA suggest "contrary evidence in the record" and "the agency's bad faith" such that *in camera* review is appropriate. *Id.* at 37 (citation omitted); ECF No. 79-1 at 2-7.

First, plaintiff argues that defendant produced an August 15, 2010 slide deck before litigation commenced, then withheld them from subsequent production in the course of this litigation. *See id.* at 29-30. Second, plaintiff argues that DIA produced a November 29, 2010

slide deck three separate times, each time withholding more material for the same record. *See id.* at 30-31. Lastly, plaintiff maintains that DIA redacted the June 11, 2010 IRTF Final Report, something DIA did not do for another FOIA plaintiff in similar litigation.[4] *See id.* at 31. For the first and third objections, DIA now admits that information was improperly withheld. DIA attributes any inconsistencies with respect to the August 15, 2010 slide deck to the fact that "[t]he application of exemptions is not an exact science and differences in application can occur." ECF No. 84-1 ¶ 9. Defendants assert, with respect to the June 11, 2010 IRTF Final Report, that the DIA "inadvertently omitted" a single page which it has subsequently produced to plaintiff. *Id.* ¶ 26. For the second objection, DIA admits that one of the versions of the slide deck was inconsistently produced, but for another, plaintiff is mistakenly referencing different records. *See id.* ¶ 25.

Plaintiff also points to internal DIA communications which reveal that a FOIA analyst believed certain records were improperly withheld under Exemptions 1 and 3. Specifically, a FOIA analyst wrote a note on November 5, 2012 stating that "unclassified portions . . . were being denied under B1." *See* ECF No. 78-4. The same analyst reiterated the point in another email, stating that "[s]ome of the documents being denied in full contain unclassified/FOUO paragraphs where the blanket use of B1 and B3 is being used incorrectly." *See* ECF No. 78 Exhibit 33. In response to those concerns, an unknown DIA employee noted, after re-reviewing the records, that there was "no additional information for release." *See id.* Exhibit 23. In response to a "status inquiry" from plaintiff, another unknown DIA employee noted that "6 [partial

---

[4] In his motion for summary judgment, plaintiff also originally pointed to inconsistencies between the Williams Declaration and the *Vaughn* Index. *See* ECF No. 78-1 at 34-36 (arguing that the Williams Declaration did not account for V-845 through V-850, and that V-709 through V-761 were initially marked as partially released). Defendants filed a supplemental declaration addressing the first issue to the Court's satisfaction, and plaintiff does not appear to object. *See* ECF No. 84-1 ¶ 29; *see generally* ECF No. 86. For the latter issue, plaintiff does not appear to challenge it, and the Court accepts DIA's representation of a mere "administrative" error. ECF No. 84-1 ¶ 30; *see generally* ECF No. 86.

release] docs contained unclass info withheld under (b)(1)[.]" *Id.* Exhibit 36; *see also* Defendants' Amended Objections and Responses to Plaintiff's First Set of Interrogatories ("Defendants' Interrogatory Responses") (ECF No 84-2) at 7.

Plaintiff argues that these communications evince bad faith and inconsistency warranting *in camera* review and that, at the very least, these communications preclude summary judgment in favor of defendants with respect to Exemption 1. To plaintiff, material questions of fact remain as to whether the records withheld under Exemption 1 "are, as a *factual matter*, classified" because there is no evidence that the FOIA analyst's concerns were addressed. ECF No. 78-1 at 37. Defendants counter that these communications do not evince bad faith. Moreover, defendants argue that the preliminary conclusions from a single analyst should not preclude summary judgment. *See* ECF No. 84 at 18-20, 25-26. According to defendants, after the FOIA analyst registered his concerns, all relevant records "were subsequently reevaluated and reprocessed[.]" *Id.* at 26. While defendants cannot identify the records to which the analyst was referring because the emails do not identify specific records and the analyst does not remember any details, any disagreement between the analyst and a final decisionmaker was "nothing more than an internal agency debate about a preliminary classification decision, which is irrelevant to the question of whether the agency's ultimate classification is correct." *Id.* at 19; ECF No. 84-2 at 6.

## A. Defendants Demonstrate That All Records Withheld Under Exemption 1 Contain Classified Information.

Magistrate Judge Robinson found that defendants met their burden to show that the records withheld under Exemption 1 contain classified information, explaining:

> Apart from Plaintiff's allegations of inconsistency and general argument that DIA's justifications for withholdings are conclusory, Plaintiff offers little to overcome the

"substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf*, 473 F.3d at 374. For example, in arguing more broadly that DIA's justifications are conclusory for all withholdings, Plaintiff points to DIA's justifications for withholding V-318 in its entirety. Plaintiff's Memorandum at 26. Given the conclusion that Defendants provided an adequate explanation for its withholding of this record, the undersigned has little difficulty in further concluding that V-318 and all other records withheld under Exemption 1 contain classified information that the agency properly withheld.

For each category of information under Executive Order 13,256 subsections 1.4 (a), (b), (c), (d), (g), and (h), DIA provides similar "logical" and "plausible" justifications for its withholdings. *Wolf*, 473 F.3d at 375 (citations omitted); *see* Williams Declaration ¶¶ 34-55. For example, as previously noted, DIA explains that it withheld information from thirty-four records under Exemption 1 and Section 1.4(a) of Executive Order 13,526 because the records include "general and specific details relating to another government's military operations" and how Wikileaks disclosures affected "U.S. intelligence sources and methods and foreign policy, and future foreign government military cooperation with the United States." Williams Declaration ¶ 39. DIA further explains that all records were properly classified and goes on to describe each category of records which DIA withheld and the harms associated with potential disclosure. *See id.* ¶¶ 36, 37-55. Because "searching judicial review" is inappropriate in these circumstances, the undersigned must take these justifications at face value. *Ctr. for Nat. Sec. Studies*, 331 F.3d at 927.

ECF No. 87 at 26-27.

The Court agrees with this analysis. Plaintiff objects, arguing that there is still a factual dispute about whether DIA has actually determined that the records at issue were classified. *See* ECF No. 89 at 21-22. This objection is without merit. Although a DIA FOIA analyst initially believed that some of the records withheld under Exemption 1 were unclassified, those records were later reprocessed, and DIA determined that those records actually were classified. *See* ECF No. 84-2 at 6. On September 12, 2013, DIA notified Mr. Khatchadourian that it had identified six responsive records and that two of them were being released in full. *See* ECF No. 64-1 ¶ 8. Additionally, there is no dispute that DIA's declarant has expressly stated that all of the information withheld under Exemption 1 has been classified because releasing the information could reasonably be expected to cause serious or grave harm to national security. *See id.* at ¶ 36.

DIA was entitled to reprocess the records and change its mind about whether they were classified. Agencies frequently do this, and oftentimes they realize that they can release documents they previously thought should be exempt. If agencies can later release information they previously withheld, there is no reason why the reverse should be impermissible. For these reasons, defendants have sufficiently demonstrated that records withheld under Exemption 1 are classified.

### B. Plaintiff Fails to Demonstrate the Existence of Bad Faith.

Few cases in this Circuit address what constitutes bad faith, with most cases focusing on what is *not* bad faith. Courts in this Circuit "decline[] to find subsequent disclosure as evidence of bad faith, reasoning that 'to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure.'" *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) ("*Pub. Citizen II*")) (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) ("*Pub. Citizen I*")). Likewise, a court will not find bad faith by "a mere allegation of agency misrepresentation or bad faith nor by past agency misconduct in other unrelated cases." *Hayden*, 608 F.2d at 1387. In one case wherein the Sixth Circuit found bad faith, a plaintiff seeking records related to the FBI's COINTELPRO program demonstrated that the FBI's "infringement of civil liberties" through the program, not the FOIA response itself, was "evidence of bad faith or illegality with regard to the underlying activities which generated the documents at issue." *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994).

> Magistrate Judge Robinson found no evidence of bad faith, explaining:
>
> DIA's inconsistent approach to the classification designations of several records is not evidence of bad faith because DIA has subsequently corrected any errors. *See* Supplemental Williams Declaration ¶¶ 9, 26. This is the precise situation where, if

the undersigned were to "find subsequent disclosure as evidence of bad faith," such a finding would create a perverse incentive against disclosure. *Pub. Citizen II*, 276 F.3d at 645. For the slide deck which DIA allegedly produced three times, each time with more redactions, the undersigned concludes that one of the three records is not the same as the other two. *Compare* Townsend Declaration Exhibit 37, at 107 (reflecting a "Media Analysis" at page 12 of the slide deck) *and* Townsend Declaration Exhibit 38, at 117 (reflecting the same) *with* Townsend Declaration Exhibit 38, at 122 (reflecting a "Media Analysis" at page 7 of the slide deck). For the two identical records with different redactions, the undersigned accepts DIA's explanation of "human error." Supplemental Williams Declaration ¶ 25. While this admission is not a "subsequent disclosure[,]" a single discrepancy is not sufficient for a wholesale finding of bad faith for all of DIA's Exemption 1 withholdings. *Pub. Citizen II*, 276 F.3d at 645.

Nor do DIA's internal communications evince bad faith. After the FOIA analyst registered his concerns about improper withholdings, DIA reprocessed all of the records that he reviewed. Defendants' Interrogatory Responses at 4-6. DIA made efforts to identify the particular records for which the analyst registered concern. *Id.* at 5-6. Any failure to do so has less to do with bad faith and more to do with the fact that the analyst's emails do not identify particular records. *Id.* Moreover, there is some evidence that the six records identified for partial release were, in fact, re-reviewed. *See id.* at 8-9. There is therefore no evidence of "bad faith or illegality" with respect to the nature of the underlying records or the search itself. *Jones*, 41 F.3d at 242.

ECF No. 87 at 28-29.

The Court concurs with this analysis. Plaintiff objects, arguing that DIA's quality control process is evidence of bad faith. *See* ECF No. 89 at 17-21. As previously explained, however, DIA is entitled to reprocess records and change its mind about what is classified. Agencies should be encouraged to review records multiple times to ensure that all unclassified information is released and to be certain that no classified information inadvertently slips through. Punishing DIA for double-checking its records would only hinder the agency's incentive to take another look at its records in subsequent cases. Additionally, the *Vaughn* Index and accompanying declarations are sufficient to convince the Court that Exemption 1 was properly invoked. Essentially, DIA's internal communications are not evidence of bad faith.

Plaintiff also argues that errors in DIA's production are evidence of bad faith. Specifically, plaintiff suggests that inconsistent applications of redactions demonstrates bad faith. *See* ECF No. 89 at 19-20. It is important to note, however, that the agency reviewed the slide deck twice. When it was reviewed for the second time (three years later), FOIA exemptions were applied differently. This is bound to happen when large numbers of records are reviewed three years apart, and it is insufficient to show bad faith. Essentially, although there is evidence of some minor mistakes, plaintiff has been unable to show that these mistakes amount to bad faith.

In his objection, plaintiff points to DIA's withholding of portions of a record in this case that were produced in another case and asks the Court to view that withholding as evidence of bad faith. ECF No. 89 at 20. The supplemental Williams Declaration confirms that identical documents were produced in both cases. *See* ECF No. 84-1 ¶ 26. DIA apparently sent those documents to DOJ attorney Nicholas Cartier on June 5, 2019, and he accidentally failed to forward them to plaintiff. ECF No. 90-1 ¶ 4. Upon reading plaintiff's objection to the report, however, DIA realized that the eleventh page of the document was inadvertently omitted from the version initially given to plaintiff, and on March 4, 2020, DIA provided plaintiff with the missing page. *See* ECF No. 90-1 ¶ 3. There is no evidence that the eleventh page contains anything that the government would have a particular interest in hiding, suggesting that Mr. Cartier's failure to forward the page was most likely an accident rather than a part of some nefarious scheme to keep Mr. Khatchadourian from reporting on the page's contents. In light of DIA's prompt rectification of what was clearly a mere oversight, the Court concludes that plaintiff has not shown evidence of bad faith.

## C. Plaintiff Fails to Demonstrate the Existence of Contradictory Evidence.

Pursuant to Executive Order 13526, agencies have the ability to "reclassify specific information only when the standards and procedures for classifying information under this order are followed." § 1.5(c). An "earlier (non) classification decision" therefore does not "preclude[] or interfere[] with the right of the [agency] to reclassify the information later[.]" *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 80 (D.C. Cir. 1987). In *Goldberg*, this Circuit held that, in the summary judgment context, "a FOIA petitioner must do more than point to evidence that the information sought was at some previous time classified differently." *Id.* at 81. Rather, a FOIA plaintiff must point to "contrary evidence [which] must somehow undermine or call into question the correctness of the classification status of the withheld information, or the agency's explanation for the classification." *Id.* The Court held that the "prior, *unexplained* decisions" of ambassadors to mark withheld cables as "unclassified" was insufficient to undermine the State Department's later decision to classify the cables. *Id.* at 80-81.

Magistrate Judge Robinson found that plaintiff failed to demonstrate the existence of contradictory evidence, explaining:

> [T]he record is vague and ambiguous in many respects. There is no evidence, for example, that DIA ever reclassified any information. Ms. Williams, who has declassification authority pursuant to Executive Order 13,256, "determined that an original classification authority properly classified the information withheld by DIA under Exemption 1[.]" Williams Declaration ¶ 36. She does not explain when a classification authority made these determinations or which classification authorities made various decisions. This problem is compounded by the FOIA analyst's belief that portions of certain records should not be considered classified. It is possible that the analyst believed this because, in fact, the portions were not classified by a classification authority at the time the analyst reviewed them. It is equally possible that the portions were classified and the analyst believed they should be declassified. There is no clear record on the sequence of any of these decisions. However, no matter the exact sequence, an agency's affidavit or declaration is entitled to "substantial weight[.]" *Wolf*, 473 F.3d at 374. The Williams Declaration provides that a classification authority "properly classified the information withheld by DIA under Exemption 1[.]" Williams Declaration ¶

36. There is insufficient evidence of contradictory evidence because, whether DIA reclassified or declined to declassify the information identified by the FOIA analyst, DIA has stated that the withholdings include information which some classification authority has designated as classified at some point.

ECF No. 87 at 29-30.

The Court agrees with this analysis and finds nothing in any of plaintiff's filings (including his objection to the report and reply in support of his objection) that would show contradictory evidence. Therefore, plaintiff has not only failed to show bad faith, but has also failed to show the existence of any contradictory evidence.

### D. Defendants Fail to Demonstrate an Adequate Segregability Analysis For Records Withheld Pursuant to Exemption 1.

FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after the deletion of the portions which are exempt." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc.*, 566 F.2d at 260. While "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" agencies must still demonstrate with "reasonable specificity" the bases for their conclusions regarding segregability. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted). An agency "must usually submit a sufficiently detailed *Vaughn* index for each document and an affidavit or declaration stating that it has released all segregable material" to meet this burden. *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 55 (D.D.C. 2019). A "conclusory affidavit" or declaration is insufficient. *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008).

In a Declaration, DIA averred that, for all records:

> As required under FOIA, subject matter experts carefully reviewed the information set forth in the records identified in DIA's *Vaughn* Index line-by-line to determine whether DIA could make any discretionary disclosures by segregating and releasing non-exempt information. Based on the recommendation of the subject matter experts, I have determined that all reasonably segregable non-exempt information has been released to the plaintiff and that no additional information may be segregated in any meaningful way without disclosing sensitive information.

ECF No. 64-1 ¶ 63. DIA withheld approximately 497 records in full, the majority of which included Exemption 1 as a basis for their nondisclosure. *See Vaughn* Index; Amended *Vaughn* Index. Relying on *Johnson*, DIA argues that "[n]o more was required" beyond this single paragraph. ECF No. 84 at 17. Plaintiff contends that this paragraph is insufficient because there is no "individualized segregability analysis with respect to any record, hampering the Court's ability to evaluate whether Defendants have segregated and released all non-exempt information." ECF No. 78-1 at 27.

Magistrate Judge Robinson found that defendants failed to demonstrate an adequate segregability analysis for these records, explaining:

> [T]he conclusory nature of DIA's *Vaughn* Index and Declarations, combined with internal communications suggesting that an inadequate segregability analysis took place, leads the undersigned to recommend that summary judgment be denied with respect to DIA's Exemption 1 withholdings. Courts in this Circuit have indeed held that an agency satisfied its burden in cases where the agency "conducted a line-by-line review and disclosed all reasonably segregable non-exempt information[.]" *Sack v. Cent. Intelligence Agency*, 49 F. Supp. 3d 15, 23 (D.D.C. 2014); *see also Johnson*, 310 F.3d at 776. In these cases, however, agencies offered more detail beyond such assertions to enable judicial review of whether records could be segregated. In *Johnson*, the agency submitted "a comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld." 310 F.3d at 776. In *Sack*, "the Agency's descriptions of the documents withheld and justifications for the withholdings [were] sufficiently detailed[.]" 49 F. Supp. 3d at 23; *see also ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 195 (D.D.C. 2012) (finding segregability satisfied with "line-by-line review" in addition to "sufficiently detailed *Vaughn* index and declarations enumerating the reasons why each document was properly withheld"). The only case where a court in this Circuit suggested that a "line-by-line analysis" could, "[a]t a minimum," be sufficient was one in which the court determined that the lack of a line-by-line review demonstrated the insufficiency of the agency's analysis.

*Perry-Torres v. U.S. Dep't of State*, 404 F. Supp. 2d 140, 144 (D.D.C. 2005). In other words, the court in *Perry-Torres* held that a line-by-line analysis was *necessary*, not that it was *sufficient* as DIA effectively urges here. *See id.*

While DIA provided a paragraph explaining that "experts" reviewed all records "line-by-line[,]" there is no information elsewhere in the Williams Declaration or *Vaughn* Index that explain with any specificity, much less "reasonable specificity[,]" how the agency undertook its segregability analysis. Williams Declaration ¶ 63; *Johnson*, 310 F.3d at 776. As discussed, DIA has sufficiently demonstrated that V-318 contains information exempt under Exemption 1 because the *Vaughn* Index describes the harm associated with disclosure and explains that the information was classified. While DIA's *Vaughn* Index is sparse, DIA's declarations provide further context for DIA's conclusion that the record contains classified information. By contrast, DIA's *Vaughn* Index and Declarations are both sparse with respect to segregability. DIA has not explained whether V-318, an undated, untitled "Document Log" contains any "non-exempt portions of a document . . . inextricably intertwined with exempt portions[,]" or whether the entire record consists only of exempt information. *Mead Data Cent., Inc.*, 566 F.2d at 260. DIA's "conclusory" *Vaughn* Index and Declarations are insufficient. *Stolt-Nielsen Transp. Grp. Ltd.*, 534 F.3d at 734.

This problem is compounded by a DIA FOIA analyst's repeated concern that "the blanket use of B1 and B3 is being used incorrectly." Townsend Declaration Exhibit 33. While these communications are insufficient to demonstrate bad faith or contradictory evidence with respect to DIA's Exemption 1 holdings as a whole, it suggests that DIA's segregability analysis may not have been adequate. Notably, while DIA took great pains to identify the records identified by the FOIA analyst, Defendants do not explain the process by which DIA applied a segregability analysis in any of its reprocessing. *See* Defendants' Interrogatory Responses at 4-6. At the very least, DIA has not adequately explained its segregability analysis. The undersigned therefore recommends that Plaintiff and Defendants' motions for summary judgment be denied without prejudice with respect to all Exemption 1 withholdings pending a determination of whether the records are segregable. *See Sussman*, 494 F.3d at 1116 ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.").

ECF No. 87 at 31-33.

Defendants never filed an objection to the report, and they ask this Court to adopt

Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1.

The Court also agrees with Magistrate Judge Robinson's analysis and will therefore order

defendants to supplement the record with respect to the segregability issue.

### E. *In Camera* Review is Inappropriate.

Courts have "'broad discretion' to decide whether *in camera* review is necessary."

*100Reporters LLC*, 248 F. Supp. 3d at 166 (citation omitted). *In camera* review is "'particularly

appropriate when either the agency affidavits are insufficiently detailed to permit meaningful

review of exemption claims or there is evidence of bad faith on the part of the agency,' when the

number of withheld documents is relatively small, or 'when the dispute turns on the contents of

the withheld documents, and not the parties' interpretations of those documents.'" *Hall v. Cent.*

*Intelligence Agency*, 881 F. Supp. 2d 38, 74 (D.D.C. 2012) (quoting *Quinon v. Fed. Bureau of*

*Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)). Plaintiff argues that in light of defendants'

insufficient justifications, bad faith, and contradictory evidence in the record, limited *in camera*

review of sixty-six records is appropriate. ECF No. 79-1 at 2-7.

Magistrate Judge Robinson found that *in camera* review was not warranted in this case,

explaining:

> [I]n *camera* review would be burdensome and inappropriate because there is no
> bad faith or contradictory evidence in the record. Moreover, while sixty-six records
> is "relatively small" considering the 850 records at issue here, these sixty-six
> records are not all "short in length." *Quinon*, 86 F.3d at 1228 (quoting *Carter v.*
> *U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987)); *see, e.g.*, Amended
> *Vaughn* Index at 72 (V-534) (describing a fifty-page slide deck). A reviewing court
> without the specialized knowledge of an agency such as DIA would also have no
> basis to determine which information within hundreds of pages could be made
> public without posing serious harm to national security.
>
> The undersigned recommends that the court order Defendants to supplement their
> *Vaughn* Index and associated declarations to provide the "reasonable specificity"
> necessary to enable judicial review with respect to segregability. *Johnson*, 310 F.3d
> at 776. To the extent that Defendants determine that such "reasonable specificity"
> would lead to the disclosure of classified information, the undersigned recommends
> that Defendants be allowed to submit a declaration *in camera* similar to the
> procedure outlined in *Hayden*. *Id.*; *see Hayden*, 608 F.2d at 1383. If DIA chooses
> this path, the undersigned recommends that the court order DIA to release to
> Plaintiff as much of its justifications as possible. *See Hayden*, 608 F.2d at 1385
> (affirming *in camera* affidavit procedure because it "created 'as complete a public

record as is possible'") (citation omitted). In the interim, the undersigned recommends that Defendants' motion for summary judgment be denied without prejudice as to their Exemption 1 withholdings pending a determination of whether all fully withheld records are segregable and whether all partially released records are further segregable.

ECF No. 87 at 34-35.

The Court agrees with this analysis. Plaintiff objects, but as explained above, plaintiff has not been able to demonstrate bad faith or contradictory evidence. *In camera* review would be extremely burdensome, and such an extreme measure is simply not warranted in this case. The Court will therefore deny plaintiff's motion for *in camera* review.

### IV. For Defendants Invocation of Exemption 3, Some Records Withheld Contain Information That Would Reveal DIA Functions, and Most Records Withheld Contain Information Relating to Intelligence Sources and Methods, But Defendants Fail to Demonstrate an Adequate Segregability Analysis.

Exemption 3 protects from disclosure any information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). To qualify under Exemption 3, a statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3)(A). Two such statutes are relevant here. 10 U.S.C. § 424 exempts from disclosure of "the organization or any function of" the DIA as well as "the number of persons employed by or assigned or detailed to" the DIA and the "name, official title, occupational series, grade, or salary of any such person." § 424(a). 50 U.S.C. § 3024 states, in relevant part, that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." § 3024(i)(1).

An agency invoking Exemption 3 must meet two requirements. *See Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 167-68 (1985). First, the invoked statute must qualify as an

exempting statute under Exemption 3. *See id.* Second, the withheld material must be the kind of

material covered by the statute. *See id.* Just as with Exemption 1, a court "must accord

substantial weight to an agency's affidavit" or declaration. *Am. Civil Liberties Union*, 628 F.3d at

619 (holding that deference is owed under Exemptions 1 and 3 in the national security context).

An agency will be entitled to summary judgment if the agency submits an affidavit or declaration

which "describes the justifications for withholding the information with specific detail,

demonstrates that the information withheld logically falls within the claimed exemption, and is

not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.*

(citation omitted). The justifications will be upheld if "logical" or "plausible." *Wolf*, 473 F.3d at

375 (citations omitted). Plaintiff does not dispute that both statutes can form the basis of an

exemption under Exemption 3. *See* ECF No. 78-1 at 38. Plaintiff contends, however, that the two

statutes "are being expansively interpreted and improperly asserted in this case." *Id.*

### A. Defendants Demonstrate That Some Records Withheld Pursuant to 10 U.S.C. § 424 Contain Information That Would Reveal DIA Functions.

10 U.S.C. § 424 protects from disclosure:

> (1) the organization or any function of an organization of the Department of Defense named in subsection (b); or

> (2) the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person.

10 U.S.C. § 424(a). The law is an exempting statute under Exemption 3 which covers DIA. *Sack*

*v. Cent. Intelligence Agency*, 53 F. Supp. 3d 154, 174 n. 17 (D.D.C. 2014); 10 U.S.C. §

424(b)(1). Plaintiff does not dispute that DIA may rely on this law to protect the "names, office

affiliations, phone numbers, secure system email addresses, and other contact information of

DIA personnel as well as web addresses on secure networks." ECF No. 78-1 at 39. Plaintiff takes

issue with DIA's attempt to shield from disclosure information about DIA's "functions," which, to plaintiff, are outside the scope of 10 U.S.C. § 424. *Id.* In response, defendants argue that 10 U.S.C. § 424(a)(1) covers "functions of the DIA." ECF No. 84 at 21.

While courts in this Circuit routinely consider whether information would reveal names of or information related to employees of organizations protected under the second prong of Section 424, no court in this Circuit appears to have considered the exact meaning of "the organization or any function of any organization" under the first prong. *See, e.g.*, *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 197 F. Supp. 3d 165, 174 (D.D.C. 2016) (holding that the agency could properly withhold "names or contact information"). Based on the parties' briefings, Magistrate Judge Robinson's research, and the Court's own research, only one case presents this issue. *See Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015). In *Hamdan*, as here, DIA withheld "the names of the governments with which the DIA shares intelligence." *Id.* at 777; ECF No. 64-1 ¶ 58 (noting that DIA withheld information concerning "[t]he countries that DIA shares specific intelligence with"). The Ninth Circuit reasoned that reading the first prong of Section 424 to include "only information about DIA personnel would effectively read the first prong out of the statute" because the second prong effectively protects that information. *See Hamdan*, 797 F.3d at 776. Taken in context with the other provisions of Section 424, the Ninth Circuit concluded that "functions of any organization" includes information like "policies" but not the underlying activities themselves. *Id.* The Court finds this reasoning persuasive. The overall purpose of Section 424 is to protect from disclosure how an intelligence agency such as DIA is structured. The first prong accomplishes this goal by protecting the policies by which DIA operates. The second prong accomplishes this goal by protecting the names and identifying details of DIA's employees.

Magistrate Judge Robinson determined that defendants had demonstrated that some records withheld under Section 424 contain information that would reveal DIA functions, explaining:

> Here, "the countries that DIA shares specific intelligence with" qualifies as a "function" under Section 424(a)(1) because it is a general policy affecting how DIA is structured. Williams Declaration ¶ 58. For the same reason, it is permissible for DIA to withhold information about the other government agencies with which DIA shares information. *See id.* DIA's withholding of information "which would reveal DIA's organizational structure" also falls squarely within Section 424(a)(1). *See Vaughn* Index at 39 (V-008). So too does DIA's withholding of "[e]mail addresses and computer links from a secure network" because that information concerns how DIA configures its technology infrastructure. *See Vaughn* Index at 51 (V-040). Defendants therefore demonstrate that these records contain information properly withheld under Section 424.
>
> DIA also indicated for numerous records that the agency withheld information because it "would reveal DIA functions" without providing meaningful context about what particular DIA function the information would reveal. *See, e.g., Vaughn* Index at 67 (V-056); Supplemental Williams Declaration ¶ 31 ("clarify[ing] that [DIA] has properly withheld information relating to sensitive functions of the DIA"). The undersigned is concerned that, with the number of exemptions claimed under Section 424 and the stated justification that the information "would reveal DIA functions," that Section 424 is being interpreted expansively here.[5] Plaintiff points to one example. In a partial released record, DIA withheld some news coverage collected by the Congressional and Public Affairs Liaison in the form of a slide presentation. *See* Townsend Declaration Exhibit 30, at 77. What a daily news roundup primarily reveals is not the function of DIA's Congressional and Public Affairs Liaison, but the carrying out of a function. The name of the Liaison may be properly withheld under Section 424(a)(2). *See id.* at 75. However, to the extent the agency withheld specific news coverage because it would reveal the DIA's functions under Section 424(a)(1), this was in error because disclosure of the coverage the Liaison collected would not reveal DIA functions. *See Vaughn* Index at 288 (V-278) (noting that the agency withheld information in part because it "would reveal DIA functions"). To the extent the agency withheld other, public news articles based on the same rationale, the undersigned recommends that Plaintiff's motion be granted for that withheld information.
>
> For other withholdings under Section 424(a)(1), the undersigned has no "specific detail" to determine whether this information concerned a function or merely concerned the carrying out of a function. *Am. Civil Liberties Union*, 628 F.3d at 619; *see, e.g., Vaughn* Index at 67 (V-056). If Section 424 precluded disclosure of

---

[5] DIA withheld all but twenty records under Exemption 3, the vast majority of which included this same justification. *See Vaughn* Index at 809.

records which, in revealing the carrying out of a function, incidentally revealed the nature of a function, DIA and other intelligence agencies could withhold nearly all records they possess, something that Congress surely did not intend in enacting Section 424. For all information withheld because it "would reveal DIA functions[,]" the undersigned recommends that Defendants be ordered to supplement the *Vaughn* Index to further explain the basis of their withholdings.

ECF No. 87 at 38-39.

The Court agrees with this analysis. Plaintiff does not appear to object to Magistrate Judge Robinson's finding that certain documents were properly withheld under Section 424, meaning that he waived the right to contest that determination. Defendants never filed an objection to the report, and they ask this Court to adopt Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1. This means that defendants do not object to providing more detail for certain documents. The Court also agrees with Magistrate Judge Robinson's analysis and will therefore order that for all documents withheld on the basis of "revealing DIA functions," defendants must supplement the record to further explain the basis of their withholdings.

### B. Defendants Demonstrate That Most Records Withheld Pursuant to 50 U.S.C. § 3024(i) Contain Information Relating to Intelligence Sources and Methods or Information Which Could Lead to Disclosure of Such Methods.

50 U.S.C. § 3024(i)(1) protects "intelligence sources and methods from unauthorized disclosure." As plaintiff concedes, this statute is a qualifying statute under Exemption 3. *See Leopold v. Cent. Intelligence Agency*, 380 F. Supp. 3d 14, 28 (D.D.C. 2019) ("*Leopold II*"); ECF No. 78-1 at 38. Courts in this Circuit construe § 3024(i) broadly to protect information that "*relates* to intelligence sources and methods" and information which "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Leopold II*, 380 F. Supp. 3d at 28 (citations and internal quotation marks omitted).

Plaintiff points to several examples of withholdings which, according to plaintiff, could not conceivably contain information "related to intelligence sources and methods" or "lead to the unauthorized disclosure of intelligence sources and methods." *See id.* First, plaintiff contends that a record concerning the "Financial Impact" of the IRTF does not relate to or reveal DIA's intelligence practices. ECF No. 78-1 at 40 (citing *Vaughn* Index at 706 (V-822, 823)). Second, plaintiff argues that an unclassified "Public Affairs Announcement" could not relate to or reveal DIA's intelligence practices. *Id.* at 37-38 (citing *Vaughn* Index at 604 (V-601)). Third and lastly, plaintiff maintains that public news articles could not relate to or reveal DIA's intelligence practices. *Id.* at 38.

Magistrate Judge Robinson found that most of the records at issue do contain information relating to intelligence sources and methods or information that could lead to disclosure of such methods, explaining:

> Plaintiff's objections arise from a false premise: "Defendants cannot withhold non-secret information under 50 U.S.C. § 3024(i)[.]" *Id.* Defendants can. *See Leopold II*, 380 F. Supp. 3d at 28. 50 U.S.C. § 3024 is a "near-blanket FOIA exemption" which covers public and non-public information because "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." *Leopold v. Cent. Intelligence Agency*, 106 F. Supp. 3d 51, 57-58 (D.D.C. 2015) ("*Leopold I*") (citing *Whalen v. U.S. Marine Corps*, 407 F. Supp. 2d 54, 59 n. 5 (D.D.C. 2005); *see also Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 178 (1985)). Under the law, the undersigned owes DIA "considerable deference" to determine whether information "relates to intelligence sources and methods" and information which "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Leopold I*, 106 F. Supp. 3d at 57-58 (citations and internal quotation marks omitted).
>
> In this context, a record assessing the financial impact of the IRTF could reveal information about DIA's intelligence sources and methods. Courts in this Circuit have routinely come to similar conclusions about the financial information of intelligence agencies. *See id.* at 58 (holding that disclosure of CIA expenditures "could shed light on the funds that were available for particular activities, which could, in turn, divulge the agency's capabilities and priorities"); *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 150 (D.C. Cir. 1980) (holding that disclosure of "rates and total fees paid to attorneys is that such information could give leads to

information about covert activities that constitute intelligence methods"); *Aftergood v. Cent. Intelligence Agency*, 355 F. Supp. 2d 557, 562 (D.D.C. 2005) (holding that "intelligence budget information 'relates to intelligence methods, namely the allocation, transfer and funding of intelligence programs'") (citation omitted). Notwithstanding the fact that a Deputy IRTF Chief already testified about the overall cost of IRTF and broad categories of spending, any further level of detail would "shed light on the funds that were available for particular activities, which could, in turn, divulge the agency's capabilities and priorities." *See* Townsend Declaration, Exhibit 4, at 163-64; *Leopold I*, 106 F. Supp. 3d at 58.

DIA's withholding of public news articles DIA collected is within the scope of 50 U.S.C. § 3024(i) as well because, while collection of a single news article "is not of obvious importance in itself[,]" a pattern of collecting particular news sources or particular types of stories could reveal a method of collecting intelligence. *Leopold I*, 106 F. Supp. 3d at 58. While DIA disclosed some of its collected news items to Plaintiff, the undersigned must give "considerable deference" to DIA's stated justification and choices in determining which news items to withhold. *Id.*

Though DIA enjoys a "near-blanket FOIA exemption" under which courts grant DIA "considerable deference[,]" the undersigned has no basis to determine whether a "Public Affairs Announcement" meets even the low bar under 50 U.S.C. § 3024(i). *See id.* at 57-58 (citation omitted). DIA provides no real information about what the announcement contains. If, as the title of the document implies, DIA affirmatively released the document to the public, it stands to reason that DIA would ensure that it would not relate to or reveal DIA's intelligence practices. As previously discussed, the public nature of information does not mean it cannot be protected under 50 U.S.C. § 3024(i). Still, the nature of the record indicates that DIA might have taken precautions to ensure that it does not relate to or reveal intelligence sources or methods. Without more, the undersigned cannot recommend summary judgment for Defendants for this withholding. The undersigned recommends that Defendants be ordered to supplement their *Vaughn* Index for this withholding. Defendants demonstrate that all other records withheld under Exemption 3 and 50 U.S.C. § 3024(i) contain information that "*relates to* intelligence sources and methods" or information which "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *Leopold II*, 380 F. Supp. 3d at 28.

ECF No. 87 at 40-42.

The Court agrees with this analysis. Plaintiff objects, arguing that financial information was improperly withheld. As the IRTF Chief testified, however, information beyond the overall cost of the IRTF and broad categories of spending would divulge information protected under Section 3024(i). This is supported by *Vaughn* Index entries for V-822 and 823. Plaintiff also

maintains that DIA should not be able to withhold slides in V-287 containing information about public news media articles; however, plaintiff has been again been unable to show why the *Vaughn* Index is insufficient to warrant withholding this information. Therefore, plaintiffs objections regarding Section 3024(i) are without merit.

### C. Defendants Fail to Demonstrate an Adequate Segregability Analysis For Records Withheld Pursuant to Exemption 3.

The segregability analysis for Exemption 3 is the same as for Exemption 1, which was explained in Section III(D). Like with Exemption 1, Magistrate Judge Robinson found that defendants did not demonstrate an adequate segregability analysis for records withheld under Exemption 3. She explained:

> . . . Defendants' segregability analysis is lacking for Exemption 3 for the same reasons that the segregability analysis is lacking for Exemption 1. There is no information in the Williams Declaration or *Vaughn* Index that explain with "reasonable specificity" how the agency undertook its segregability analysis for its Exemption 3 withholdings. *Johnson*, 310 F.3d at 776; Williams Declaration ¶ 63. Based on the conclusory nature of Defendants' segregability analysis combined with evidence that DIA used "blanket" applications of Exemption 3, Defendants do not meet their burden to demonstrate that they have provided all "reasonably segregable" non-exempt information to Plaintiff. *See* Townsend Declaration Exhibit 33; 5 U.S.C. § 552(b). The undersigned therefore recommends that Plaintiff's and Defendants' motions for summary judgment be denied without prejudice with respect to all Exemption 3 withholdings pending a determination of whether all fully withheld records are segregable and whether all partially released records are further segregable. *See Sussman*, 494 F.3d at 1116 ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.").

> It is neither necessary nor appropriate to grant *in camera* review to determine whether Defendants have met their segregability burden. As discussed, there is no evidence of bad faith or contradictory evidence with respect to any withholding. In light of the large number of records withheld under Exemption 3, the proper course is to order DIA to provide the "reasonable specificity" necessary to enable judicial review with respect to segregability. *Johnson*, 310 F.3d at 776. The undersigned therefore recommends the same process for Exemption 3 as for Exemption 1.

ECF No. 87 at 42-43.

Defendants never filed an objection to the report, and they ask this Court to adopt

Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1. The Court

also agrees with Magistrate Judge Robinson's analysis and will therefore order defendants to

supplement the record with respect to the segregability issue.

**V. For Exemption 5, Although the Records Withheld Are Inter or Intra-Agency Communications, Defendants Fail to Demonstrate That They Are Predecisional or Deliberative, and Defendants Fail to Demonstrate an Adequate Segregability Analysis.**

FOIA's Exemption 5 exempts from disclosure any "interagency or intra-agency" records

which would otherwise be exempted from discovery in the context of civil litigation. *See* 5

U.S.C. § 552(b)(5). A record qualifies as exempt only if: "(1) its source is a government agency,

and (2) it falls 'within the ambit of a privilege against discovery under judicial standards that

would govern litigation against the agency that holds it.'" *Am. Oversight v. U.S. Dep't of Health

& Human Servs.*, 380 F. Supp. 3d 45, 52 (D.D.C. 2019) (quoting *U.S. Dep't of Interior v.

Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

The first requirement under Exemption 5—that the communication be "inter or intra-

agency"—"is no less important than the second." *Klamath*, 532 U.S. at 9. With limited

exceptions, the record must originate from an agency, defined as "each authority of the

Government of the United States, [which] includes any executive department, military

department, Government corporation, Government controlled corporation, or other establishment

in the executive branch of the Government . . ., or any independent regulatory agency[.]" *Id.*

(quoting 5 U.S.C. § 552(f)) (internal quotation marks omitted).

The second requirement is that that the information must fit within a recognized

privilege. *See Am. Oversight*, 380 F. Supp. 3d at 52. Defendants invoke the deliberative process

privilege, which:

... serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

A record protected under this privilege must be both "predecisional" and "deliberative." *Id.* A record is predecisional if it was "generated before the adoption of an agency policy[.]" *Id.* A reviewing court's task is not merely to determine the date of a decision and then the date of a relevant record to determine whether it is predecisional. *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004) (holding that such an approach is "simplistic"). A record generated after one decision can be the basis of another, future decision. *See id.* Alternatively, a record post-dating a decision may still reflect predecisional information if it "recounts pre-decisional deliberations." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, No. 04-1625 PLF, 2006 WL 6870435, at *7 (D.D.C. Dec. 22, 2006) (citation omitted). Whether a record is predecisional depends on a record's context relative to particular agency decisions or series of decisions. *See Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 61 (D.D.C. 2014). It is the agency's burden to "pinpoint" a particular decision or "sub-decision" which the record informed. *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (citation omitted); *100Reporters LLC*, 248 F. Supp. 3d at 153. An agency cannot merely point to an "umbrella process" if there are "subsidiary decisions" that a record informs. *100Reporters LLC*, 248 F. Supp. 3d at 153.

A record is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866. This covers "recommendations, draft documents,

proposals, suggestions" and other documents that would "inaccurately reflect or prematurely disclose" the agency's views. *Id.* Material that is "purely factual" cannot generally be withheld unless it reflects "exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (citation omitted). The distinction between "purely factual" information and information reflecting agency deliberation is not always clear. *Id.*; *see Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 164-65 (D.D.C. 2017). Courts in this Circuit therefore apply a "functional" approach to determine the applicability of the privilege in which "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Hardy*, F. Supp. 3d at 164 (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513 (D.C. Cir. 2011)).

To prove that a record meets this requirement, an agency must establish "(1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decision-making authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents." *Hardy*, 243 F. Supp. 3d at 168 (citations and internal quotation marks omitted).

## A. The Withheld Documents Are Inter or Intra-Agency Communications.

Plaintiff argues that defendants fail to meet the first threshold requirement for Exemption 5 because "it is not clear whether some withheld records, like emails, are even inter- or intra-agency, as Defendants fail to identify the author (or even agency) sender or recipient(s)." ECF No. 78-1 at 43. Defendants counter that the Williams Declaration provides that all records withheld pursuant to Exemption 5 were "internal DoD intra-agency communications or inter-

46

agency communications among members of the IRTF task force." ECF No. 84 at 22 (quoting

ECF No. 64-1 ¶ 60).

Magistrate Judge Robinson found that the documents are inter or intra-agency

communications, explaining:

> While Defendants do not identify the author of each record, Defendants nonetheless demonstrate that the records withheld under Exemption 5 were "interagency or intra-agency" records. 5 U.S.C. § 552(b)(5). Given the nature of Plaintiff's requests, it should be no surprise that a large quantity of records were "internal DoD intra-agency communications or inter-agency communications among members of the IRTF task force." Williams Declaration ¶ 60. For example, in correspondence with DIA, Plaintiff indicated that his first request encompassed, *inter alia,* emails that were "[i]ntra-ITRF . . . [t]o, from, or including DoD components[, and t]o, from or including any person at the Department of Justice[.]" Williams Declaration ¶ 60. It also stands to reason that the IRTF database, the central repository for records for an inter-agency taskforce, would primarily include inter or intra-agency communications. The undersigned therefore finds that Defendants satisfy the first threshold requirement for records withheld under Exemption 5, that the records be "inter or intra-agency[.]" *See* 5 U.S.C. § 552(b)(5).

ECF No. 87 at 46-47.

The Court agrees with this analysis. Plaintiff appears to have abandoned his argument

regarding this issue. *See generally* ECF No. 89. This means that he has waived the right to

contest Magistrate Judge Robinson's findings.

## B. Except for One Record, Defendants Do Not Demonstrate that Any Records Withheld Under Exemption 5 Are Predecisional.

The mission of the IRTF was to assess the impact of WikiLeaks disclosures. *See, e.g.,*

*Vaughn* Index at 75 (V-064). The *Vaughn* Index repeats the same rationale for every Exemption

5 withholding except for two records: "This document contains comments and recommendations,

and its content speaks to the deliberative process regarding the impact assessment of the

unauthorized disclosure of information resulting from leaked documents."[6] *See, e.g., Vaughn*

Index at 45 (V-034). Defendants maintain that the information contained within all records

withheld under Exemption 5 were "created prior to the final report and prior to any decision or

decisions on actions to remedy damage resulting from the unauthorized disclosures based on the

IRTF's assessments." *See* ECF No. 64-1 ¶ 60. Taking the Williams Declaration and *Vaughn*

Index together, DIA claims that there were two decisions which these records informed: the final

assessment itself and subsequent remedial measures taken by the Government.

Magistrate Judge Robinson found that only one record was predecisional. She explained:

> . . . Defendants fail to meet their burden to show that all records withheld under
> Exemption 5 are predecisional. There are two "umbrella" decisions that DIA
> identifies: the Final Report itself and "decisions on actions to remedy damage
> resulting from the unauthorized disclosures based on the IRTF's assessments."
> *100Reporters LLC*, 248 F. Supp. 3d at 153; Williams Declaration ¶ 60. Given the
> number and types of decisions the IRTF had to make in creating the Final Report
> and making recommendations for future actions, Defendants' "broad and opaque
> description of the deliberative process involved" is insufficient. *Trea Senior
> Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013) The
> record indicates that there were numerous "sub-decision[s]" that DIA made.
> *100Reporters LLC*, 248 F. Supp. 3d at 153 (holding that agency "failed to point to
> subsidiary decisions that fall underneath the nebulous umbrella process it has
> purported to identify"). For each record withheld, the decision it informed was
> either forward-looking, backward-looking, or both. *See* Williams Declaration ¶ 60.
> Moreover, the types of harm that the DIA assessed and its actions to remedy are
> numerous. The IRTF analyzed, *inter alia*, damage to U.S. intelligence sources,
> relationships with foreign intelligence agencies, and numerous other potential
> harms. *See* Williams Declaration ¶¶ 34-55. DIA does not explain which harm each
> record addressed, and whether the information in each record was primarily
> retrospective or forward-looking. With one exception discussed below, the "broad
> and opaque" justification for all records withheld under Exemption 5 precludes any
> finding that these records are predecisional.[7] *Trea Senior Citizens League*, 923 F.
> Supp. 2d at 68.

---

[6] Those two records are V-013 and V-850. *See Vaughn* Index, Amended *Vaughn* Index. Plaintiff does not appear to challenge V-013.

[7] The lack of dates for many records compounds the problem. While not fatal in and of itself to Defendants' Exemption 5 withholdings, dates are obviously helpful to situate these records relative to any agency decision. The following records were withheld under Exemption 5 and are marked "undated": V-34, V-165, V-494, V-496, V-497, V-498, V-510, V-573, V-580, V-585, V-604, V-605, V-628, V-637, V-638, V-640, V-641, V-646, V-647, V-654, V-607, V-669, V-670, V-674, V-705, V-778, V-807, V-817, V-827, V-828, V-829, V-830, V-831, V-840, and V-850. *See Vaughn* Index; Amended *Vaughn* Index.

For two records, DIA provides more detail. First, "DIA withheld an operational assessment aimed at assisting the DoD in addressing questions relating to the subject matter of the report, as well as conclusions and observations in response to the questions posed." Amended *Vaughn* Index at 343 (V-850). While V-850 relates to "decisions on actions to remedy damage resulting from the unauthorized disclosures based on the IRTF's assessments[,]" Defendants' explanation is lacking because they do not identify the particular sub-decision that V-850 informed. *See* Williams Declaration ¶ 60; *100Reporters LLC*, 248 F. Supp. 3d at 153. Second, DIA indicated that V-778 is an "IRTF Interim Report." *See* Amended *Vaughn* Index at 292. The Interim Report here necessarily predated the Final Report, so it was clearly "generated before the adoption of an agency policy." *See Nat'l Sec. Archive v. Cent. Intelligence Agency*, 752 F.3d 460, 463 (D.C. Cir. 2014) (holding that a draft of an official C.I.A. history of the Bay of Pigs qualified under Exemption 5) (citation omitted). With this one exception, Defendants therefore fail to demonstrate that DIA records withheld under Exemption 5 were predecisional.

ECF No. 87 at 47-49.

Plaintiff does not appear to object to this aspect of the report, meaning that he has waived the right to contest the one document that Magistrate Judge Robinson deemed predecisional. Defendants never filed an objection to the report, and they ask this Court to adopt Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1. The Court also agrees with Magistrate Judge Robinson's analysis and finds that defendants have only shown that one record is predecisional. As explained below, however, that one record is not deliberative, meaning that defendants still cannot properly invoke Exemption 5 without further supplementation of the record.

### C. Defendants Do Not Demonstrate that Any Records Withheld Under Exemption 5 Are Deliberative.

To justify its Exemption 5 withholdings, Defendants also offer blanket explanations of how the withheld records are deliberative in nature. DIA explains that all withheld records were "internal government communications, analyses, and recommendations, such as memoranda, desk notes, talking points, briefing slides, daily updates, and emails[.]" ECF No. 64-1 ¶ 60. Each

record "concerned the IRTF's interim analyses and assessments of the harm to national security resulting from unauthorized disclosures, which was all done prior to issuing the final report." *Id.* With the exception of the two records previously identified, each withholding in the *Vaughn* Index reflects DIA's conclusion that each record "contains comments and recommendations, and its content speaks to the deliberative process regarding the impact assessment of the unauthorized disclosure of information resulting from leaked documents." *See, e.g., Vaughn* Index at 45 (V-034).

Magistrate Judge Robinson found that the records withheld under Exemption 5 were not deliberative, explaining:

> For every withholding under Exemption 5, DIA's justifications fail to sufficiently describe each "individual document and the role it plays in the administrative process." *Coastal States Gas Corp.*, 617 F.2d at 867. One conclusory paragraph in a declaration and another conclusory paragraph repeated hundreds of times in a *Vaughn* Index will not do. Defendants do not satisfy any of the three criteria for protection under Exemption 5. *See Hardy*, 243 F. Supp. 3d at 168.

> First, Defendants do not provide a "precisely tailored" description of what decision-making process is involved for each record. *Coastal States Gas Corp.*, 617 F.2d at 868; *see also Hardy*, 243 F. Supp. 3d at 175 (holding that "[m]erely including the word 'analysis' in a document's description is insufficient" to demonstrate what deliberative process is involved); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (holding that "vague references" to "deliberations" in the course of agency negotiations "fail[ed] to identify a specific deliberative process to which the withheld [material] contributed). As previously discussed, Defendants do not "pinpoint" the particular decision to determine that the records at issue are predecisional. *Senate of P.R.*, 823 F.2d at 585. Defendants' conclusory justifications also frustrate review as to whether these records informed deliberations regarding particular decisions.

> Second, DIA does not explain the "function and significance of the document[s] in the agency's decisionmaking process." *Trea Senior Citizens League*, 923 F. Supp. 2d at 68 (citations omitted). DIA merely explains that each record withheld contains "comments and recommendations . . . regarding the impact statement[.]" *See, e.g., Vaughn* Index at 45 (V-034). DIA does not explain what role each record played with respect to the impact statement. It stands to reason that each of the "memoranda, desk notes, talking points, briefing slides, daily updates, and emails" withheld under Exemption 5 informed agency decision-making in distinct ways.

Williams Declaration ¶ 60. Defendants' "cursory explanations" do not explain how. *Trea Senior Citizens League*, 923 F. Supp. 2d at 69.

Third, DIA does not identify "the identities, positions, and job duties of the authors and recipients of the withheld documents." *Elec. Frontier Found.*, 826 F. Supp. 2d at 170. The undersigned has none of this "critical" information for any record. *Id.*; *see also Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("A key feature . . . is the relation between the author and recipients of the document."). DIA only states that the withheld records "were either internal DoD intra-agency communications or inter-agency communications among members of the IRTF task force[.]" Williams Declaration ¶ 60. Courts in this Circuit require more context so that a reviewing court can determine whether a record reflects a deliberative "give-and-take" process or instead reflects "the denouement of the decisionmaking." *Access Reports*, 926 F.2d at 1195 (distinguishing between the deliberative nature of communications "from a senior to a junior" and "from a junior to a senior"). The roles and identities of the authors and recipients are totally lacking here. Therefore, the undersigned recommends that Defendants be ordered to supplement the *Vaughn* Index to further explain how the records withheld under Exemption 5 are predecisional and deliberative.

ECF No. 87 at 50-51.

Defendants never filed an objection to the report, and they ask this Court to adopt Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1. The Court also agrees with Magistrate Judge Robinson's analysis and therefore finds that defendants failed to show that the documents withheld under Exemption 5 were deliberative. Therefore, defendants cannot invoke Exemption 5 without further supplementation of the record.

### D. Defendants Fail to Demonstrate am Adequate Segregability Analysis For Records Withheld Pursuant to Exemption 5.

The segregability analysis for Exemption 5 is the same as for Exemptions 1 and 3, which was explained in Section III(D). Like with Exemptions 1 and 3, Magistrate Judge Robinson found that defendants did not demonstrate an adequate segregability analysis for records withheld under Exemption 3. She explained:

While there is no evidence of internal debates suggesting that DIA did not conduct an adequate segregability analysis for its Exemption 5 withholdings, Defendants

still do not explain with "reasonable specificity" how DIA undertook its segregability analysis for its Exemption 5 withholdings. *Johnson*, 310 F.3d at 776; Williams Declaration ¶ 63. Based on the conclusory nature of Defendants' segregability analysis, Defendants do not meet their burden to demonstrate that DIA has provided all "reasonably segregable" non-exempt information to Plaintiff. 5 U.S.C. § 552(b). The undersigned therefore recommends that Defendants' motion for summary judgment be denied without prejudice, and that Defendants be ordered to supplement their justifications for Exemption 5 withholdings with an adequate segregability analysis. Further, to the extent that Plaintiff's motion for *in camera* review applies to all records, it is equally inappropriate for DIA's Exemption 5 withholdings.

ECF No. 87 at 51-52.

Defendants never filed an objection to the report, and they ask this Court to adopt Magistrate Judge Robinson's recommendation in its entirety. *See* ECF No. 90 at 1. The Court also agrees with Magistrate Judge Robinson's analysis and will therefore order defendants to supplement the record with respect to the segregability issue.

## VI. Plaintiff Does Not Challenge Defendants' Invocation of Exemption 7(C).

Exemption 7 protects from disclosure certain records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). DIA previously claimed that Exemption 7(A), applied to certain records. *See* ECF No. 84-1 ¶ 32. After further review, DIA determined that information withheld under 7(A) could be released. *See id.* DIA still maintains that subsection 7(C) applies to one record, V-287. *Id.* ¶ 33. To satisfy the first threshold question of whether the information was "compiled for law enforcement purposes," defendants maintain that the information within V-287 relates to "law enforcement investigations" undertaken by the FBI to determine "possible violations of Federal criminal laws" stemming from the Wikileaks disclosures. 5 U.S.C. § 552(b)(7); ECF No. 84-1 ¶¶ 32-34. Defendants assert that Exemption 7(C) is satisfied because disclosure of the information "could reasonably be expected to constitute an unwarranted

invasion of privacy" of the Special Agent who pursued the investigation. 5 U.S.C. § 552(b)(7)(C); ECF No. 84-1 ¶¶ 32-34.

Magistrate Judge Robinson found that because plaintiff does not challenge defendants' use of Exemption 7(C), summary judgment should be granted for the defense on this issue. She explained:

> Defendants raised these justifications for the first time in their Opposition and Reply, which included a new, supplemental Declaration. *See* Defendants' Reply at 23-24; Supplemental Williams Declaration ¶¶ 32-37. Plaintiff previously objected to these withholdings on the grounds that DIA's previous justifications merely restated the statutory standard. Plaintiff's Memorandum at 42-43. Plaintiff has subsequently indicated that he "has elected not to challenge Defendants' one invocation of Exemption 7(C) in light of the information provided in the Supplemental Williams Declaration." Plaintiff's Reply at 5 n.2. In light of Plaintiff's concession, the undersigned recommends that summary judgment be granted in favor of Defendants with respect to V-287, the only record currently withheld pursuant to Exemption 7.

ECF No. 87 at 53.

Plaintiff's objection to the report contains no mention of Exemption 7(C), and the Court agrees with Magistrate Judge Robinson's recommendation. The Court will thus grant summary judgment for the defense on this issue.


## CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART AND DENY IN PART** plaintiff's and defendants' motions for summary judgment (ECF Nos. 78 and 64 respectively).

The Court will **GRANT** defendants' motion for summary judgment and **DENY** plaintiff's motion for summary judgment with respect to (1) the adequacy and scope of DIA's search for responsive records; (2) the overall adequacy of defendants' *Vaughn* Index and associated declarations; and (3) defendants' Exemption 7 withholdings.

With respect to Exemption 1, the Court will **ORDER** defendants to supplement the record regarding the segregability analysis.

With respect to Exemption 3, the Court will **ORDER** defendants to supplement the record with respect to V-106 and all other records withheld under 10 U.S.C. § 424 on the basis of "revealing DIA functions." The Court will further **ORDER** defendants to supplement the record regarding the Exemption 3 segregability analysis.

With respect to Exemption 5, the Court will **ORDER** defendants to supplement the record regarding the deliberative process privilege. The Court will further **ORDER** defendants to supplement the record regarding the Exemption 5 segregability analysis.

The Court will **DENY** plaintiff's motion for *in camera* review (ECF No. 79).

A separate Order accompanies this Memorandum Opinion.

Date: 3/19/2020

Royce C. Lamberth
United States District Court Judge