## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RAFFI KHATCHADOURIAN**,

      *Plaintiff,*

**v.**

**DEFENSE INTELLIGENCE AGENCY,** *et al.*,

      *Defendants*.

Case No. **1:16-cv-311-RCL**

### MEMORANDUM OPINION

      This case involves plaintiff Raffi Khatchadourian's Freedom of Information Act ("FOIA") request for disclosure of records held by the Defense Intelligence Agency ("DIA"), a component of the Department of Defense. Previously, this Court granted defendants' motion for summary judgment on some counts but denied on others so that defendants could supplement the record concerning their segregability obligations under Exemptions 1, 3, and 5, and provide additional explanation for certain withholdings under Exemptions 3 and 5. *Khatchadourian v. Def. Intel. Agency* (*Khatchadourian I*), 453 F. Supp. 3d 54, 97 (D.D.C. 2020). Now, defendants have produced an updated *Vaughn* Index and segregability explanation and renew their motion for summary judgment. Defs.' Renewed Mot. for Summ. J. ("Defs.' Mot."), ECF No. 119. Khatchadourian cross-moves for partial summary judgment, Pl.'s Renewed Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 126, arguing that defendants' subsequent disclosures indicate bad faith and that numerous records remain improperly withheld. Both parties filed replies. Defs.' Reply, ECF No. 132; Pl.'s Reply, ECF No. 134. Upon consideration of the parties' filings, the relevant law, and the record herein, the Court will **GRANT** defendants' motion for summary judgment and **DENY** Khatchadourian's motion for partial summary judgment.

# I.   BACKGROUND

The background of this case has been detailed in a previous memorandum opinion. *See Khatchadourian I*, 453 F. Supp 3d at 63–65. Defendant DIA is a component of the Department of Defense with a mission to "collect, analyze, and provide intelligence on the military capabilities of foreign military forces." *Id.* at 63 (quoting Decl. of Alesia Williams in Supp. of Defendants' Mot. for Summ. J. ("Williams Decl.") ¶ 3, ECF No. 64-1). In 2010, the Secretary of Defense convened the Information Review Task Force ("IRTF") within the DIA to conduct "a damage assessment of one of the largest unauthorized leaks of U.S. government information in history"— the WikiLeaks disclosure. *Id.* at 64–65. The IRTF completed a final report in 2011 that provided a detailed analysis of the government information systems impacted by the leak. *Id.* at 65.

Plaintiff Khatchadourian is a journalist seeking to report on the WikiLeaks disclosure. *Id.* at 63. On February 16, 2012, he submitted a FOIA request to the DIA seeking three things:

> 1) Any documents relevant to the creation, scope, structure, and responsibilities of the IRTF;
>
> 2) Any conclusions, reports, or assessments (provisional and/ or final) that have been generated by the IRTF; and
>
> 3) Records of all previous FOIA requests for information pertinent to the IRTF.

*See id.* at 64; Pl.'s Statement of Material Facts ¶ 36, ECF No. 126-2. After receiving an unsatisfactory response from defendants, Khatchadourian filed his complaint in this case on February 22, 2016. Compl., ECF No. 1.

After litigation commenced, defendants conducted an additional search and identified 850 responsive records. *Khatchadourian*, 453 F. Supp. 3d at 65. Defendants withheld portions of the records under Exemptions 1, 3, 5, 6, and 7. *Id.* Both parties moved for summary judgment. *See* ECF Nos. 64 & 78.

On the first round of summary judgment, the Court granted defendants' motion for summary judgment with respect to the adequacy and scope of defendants' search, the overall adequacy of the *Vaughn* Index, and defendants' Exemption 7 withholdings. *Khatchadourian*, 453 F. Supp. 3d at 96.[1] The Court found that "the records withheld under Exemption 1 contain classified information," and were properly withheld. *Id.* at 81. The Court also found that most records under Exemption 3 were properly withheld, except for document V-106 and other documents withheld pursuant to 10 U.S.C. § 424, where the court required more information. *Id.* at 87. But the Court identified issues with defendants' segregability analysis and Exemption 5 withholdings. *Id.* The Court:

> (1) ordered defendants to supplement the record regarding their segregability analysis with respect to withholdings under Exemption 1;
> (2) ordered defendants to supplement the record regarding their segregability analysis with respect to withholdings under Exemption 3;
> (3) ordered defendants to supplement the record regarding documents withheld under Exemption 3 pursuant to 10 U.S.C. § 424;
> (4) ordered defendants to supplement the record regarding their segregability analysis with respect to withholdings under Exemption 5; and
> (5) ordered defendants to supplement the record regarding documents they withheld under the deliberative process privilege.

*See id.* at 96–97.

After the Court's memorandum opinion, defendants "initiated a 10-month renewed review of the records" at issue in this case. Defs.' Statement of Material Facts ¶ 1, ECF No. 120. Most of the DIA personnel who participated in the previous FOIA process in this case had left DIA or

---

[1] Khatchadourian did not challenge the Exemption 6 withholdings. *See* ECF No. 78-1.

"shifted to other roles," so defendants instead undertook a "renewed review of the full universe of documents withheld under Exemptions 1, 3, and 5." *Id.* ¶ 3.

The DIA assigned new subject matter experts ("SMEs") to conduct the first-line review. *Id.* ¶ 4. For Exemption 1 withholdings, SMEs examined records "line-by-line" to determine whether all portions marked as exempt were properly withheld under Exemption 1 as classified documents. *Id.* ¶ 6. If a portion of the record withheld under Exemption 1 was labeled unclassified, the SMEs sought to "determine[] whether that portion was in fact properly marked unclassified, and if so, whether it contained meaningful information not inextricably intertwined with classified information."[2] *Id.* ¶ 7. If the SMEs determined that there was intelligible, non-inextricably intertwined information, it was marked for potential release to plaintiffs. *Id.* ¶ 8. Then, DIA and DOJ counsel, "along with FOIA-LIT personnel," reviewed both the records and the SMEs' notations of segregability determinations. *Id.* ¶ 9. Second-line reviewers then updated the *Vaughn* Index. *Id.* ¶ 10.

For Exemption 3 withholdings, the SMEs on first-line review sought to determine whether "any portion of the withheld information could be released without revealing intelligence sources or methods protected under 50 U.S.C. § 3024(i), or information protected by 10 U.S.C. § 424." *Id.* ¶ 12. After reviewing the withholdings and deeming them proper, SMEs sought to determine whether there was any intelligible, non-exempt information that could be segregated. *Id.* ¶ 15. Then, like with Exemption 1, DIA and DOJ counsel reviewed each of the records in a second-line

---

[2] Khatchadourian disputes a number of DIA's factual explanations of its segregability process, arguing that they "blend factual assertions with legal argument." *See* Pl.'s Statement of Material Facts ¶ 2 n.2. This Court disagrees that explanations of defendants' segregability process are legal conclusions—especially given this Court's previous mandate to further explain the segregability process. The DIA's assertions of its process do not mean, however, that the "justifications [for withholding] are proper or that Defendants have satisfied their obligations under FOIA." *Id.* ¶ 9.

review and updated the *Vaughn* Index. *Id.* ¶ 17. Second-line reviewers were in regular contact with SMEs about their determinations. *Id.*

For withholdings under Exemption 5 and the deliberative process privilege, SMEs added notations "regarding the context of the creation of documents marked as exempt as deliberative, to support the basis for the predecisional and deliberative nature of the documents." *Id.* ¶ 19. SMEs also examined whether Exemption 5 withholdings were coextensive with other asserted withholdings. *Id.* ¶ 20. If so, they did not send those portions of the documents for second-line review. *Id.* ¶ 21. But documents withheld solely under Exemption 5 were sent for a second-line review, similar to Exemptions 1 and 3. *Id.*

All told, defendants provided supplemental releases for "approximately 287 records" after the renewed review. Pl.'s Statement of Material Facts ¶ 22. The DIA states that the supplemental releases are largely "comprised of unclassified subject headers." Defs.' Statement of Material Facts ¶ 23. Khatchadourian concedes that "some" unclassified subject headers were produced. Pl.'s Statement of Material Facts ¶ 23.

Defendants' motion for summary judgment includes a declaration from Steven Tumiski, Chief of Records Management and Information Services for the DIA, who explains in detail the basis behind withholdings under Exemptions 1, 3, and 5. *See* Decl. of Steven Tumiski ("Tumiski Decl."), ECF No. 119-1. This declaration includes detailed descriptions of individually challenged documents. After Khatchadourian filed his motion for partial summary judgment, defendants filed an additional declaration from the Director of the Information Management and Compliance Office, Brentin Evitt, who provides further explanation about the withholdings that Khatchadourian challenges. *See* Decl. of Brentin Evitt ("Evitt Decl."), ECF No. 133-1.

The record also includes a declaration from Adam Marshall, senior staff attorney at the Reporters Committee for Freedom of the Press, in support of Khatchadourian's motion for partial summary judgment. *See* Decl. of Adam Marshall ("Marshall Decl."), ECF No. 126-3. His declaration is comprised of examples of documents disclosed to Khatchadourian after defendants' renewed review. *See id.*

Defendants renewed their motion for summary judgment. Defs.' Mot. 1. They argue that the record before the Court regarding segregability and the Exemption 5 withholdings is "robust," and point to the "meticulous" second look undertaken by the DIA. *Id.* Since these were the only issues left open after *Khatchadourian I*, defendants argue summary judgment is warranted. Khatchadourian also moves for partial summary judgment. Pl.'s Mot. First, he counters that the DIA's subsequent disclosures indicate "bad faith." *Id.* at 2. Second, he raises a smattering of challenges to the withholdings of "numerous types of information, records, and categories thereof." *Id.* Both parties filed replies. Defs.' Reply, ECF No. 132; Pl.'s Reply, ECF No. 134. The parties' renewed summary judgment motions are now ripe.

## II.    LEGAL STANDARDS

### A.  Freedom Of Information Act

FOIA requires the government to disclose certain records to anyone who requests them. 5 U.S.C. § 552. Because FOIA mandates a "strong presumption in favor of disclosure," *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011), agencies may only withhold records which fall under "one of nine delineated statutory exemptions." *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). An agency withholding material under a FOIA exemption bears the burden of showing that the material falls within the bounds of the asserted exemption. *Khatchadourian I*, 453 F. Supp. 3d at 65.

### B. Summary Judgment

Summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is placed on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Most FOIA cases are resolved at the summary judgment stage. *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). When a plaintiff challenges certain agency withholdings, the agency is "entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested . . . is wholly exempt from [FOIA's] disclosure requirements." *Khatchadourian I*, 453 F. Supp. 3d. at 65 (quoting *Shapiro v. Dep't of Justice*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014)). An agency meets this burden if "any combination of its *Vaughn* Index, affidavits, or declarations 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Khatchadourian I*, 453 F. Supp. 3d. at 65 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

FOIA mandates that all "reasonably segregable portion[s] of a record" be released, even if a document includes exempt material. 5 U.S.C. § 552(a)(3), (b).  A court must "make specific findings" as to whether a "reasonably segregable portion of a record" is non-exempt and releasable "[b]efore approving the application of a FOIA exemption." *Khatchadourian I*, 453 F. Supp. 3d. at 65 (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)).

### III.   DISCUSSION

Defendants maintain that they have fulfilled their FOIA duties and released all reasonably segregable portions of the record. Defs.' Mot. 7. In response, Khatchadourian first argues that the newly released information proves that defendants have acted in bad faith. Pl.'s Mot. 2. Then,

rather than attack defendants' segregability process or withholdings broadly, Khatchadourian raises a torrent of smaller arguments to pick holes in defendants' withholdings. *Id.* 9–31. But it is Khatchadourian's arguments that do not hold water. Defendants have also now provided a "sufficiently detailed" explanation of their segregability analysis and their withholdings under Exemption 5. *Sack v. CIA*, 49 F. Supp. 3d 15, 23 (D.D.C. 2014). They are entitled to summary judgment.

The Court will first address Khatchadourian's bad faith argument. Next, the Court will evaluate defendants' Exemptions 1 and 3 segregability analyses in turn. Then the Court will evaluate defendants' withholdings under Exemption 5. Last, the Court will address Khatchadourian's two short arguments related to Exemption 7 and the names of senior IRTF leadership.

### A. Defendants Did Not Act In Bad Faith

After this Court denied summary judgment in *Khatchadourian I*, the DIA took the opportunity for a "renewed review of the full universe of documents withheld under Exemptions 1, 3, and 5." Defs.' Statement of Material Facts ¶ 3; Pl.'s Statement of Material Facts ¶ 3. As a result of this renewed review, Defs.' Statement of Material Facts ¶ 4, defendants provided supplemental releases for "approximately 287 records," Pl.'s Statement of Material Facts ¶ 22. Khatchadourian argues that this extensive rehaul of the process, far from indicating DIA's commitment to FOIA compliance, is evidence of bad faith. Pl.'s Mot. 5. This Court does not agree.

In this Circuit, courts "decline[] to find subsequent disclosure as evidence of bad faith" because to "effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure." *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002). That is what Khatchadourian asks this Court to do. Khatchadourian proffers

a number of documents or portions of documents it maintains DIA previously improperly withheld as evidence of bad faith. Pl.'s Mot. 6–7. But the cases on which Khatchadourian relies are not like this one. For example, in *Citizens for Responsibility & Ethics in Washington v. United States Department of Justice* the court conducted an *in camera* review and found unexempted material. *See* 538 F. Supp. 3d 124, 143 (D.D.C. 2021). Here, defendants engaged in an unprompted second-round review and produced these documents on their own accord. Khatchadourian's argument is not just unsupported by the record in this case. It would also create the perverse incentive against subsequent disclosure by agencies that the D.C. Circuit has instructed this Court to avoid.

Indeed, the Court previously rejected bad-faith arguments of the sort Khatchadourian makes here. As the Court previously explained in *Khatchadourian I*:

> '[P]laintiff suggests that inconsistent applications of redactions demonstrates bad faith. It is important to note, however, that the agency reviewed the [document] twice. When it was reviewed for the second time (three years later), FOIA exemptions were applied differently. This is bound to happen when large numbers of records are reviewed three years apart, and it is insufficient to show bad faith.

*Khatchadourian I*, 453 F. Supp. 3d at 80.

## B. The Defendants Are Entitled To Summary Judgment On Exemption 1

In *Khatchadourian I*, this Court held that defendants "met their burden to show that the records withheld under Exemption 1 contain classified information" but submitted only a "conclusory" segregability analysis that was insufficient to demonstrate adequate segregability. *Id.* at 79, 81. Now, defendants proffer a more detailed process for this Court's review. Defs.' Mot. 7–9. Khatchadourian, in response, challenges three types of records he claims are still improperly withheld. Pl.'s Mot. 9, 15, 19. While Khatchadourian pays lip service to the segregability analysis, in reality he challenges defendants' withholdings—which this Court has already determined are

proper. The Court finds that the newly described segregability analysis demonstrates adequate segregability and rejects Khatchadourian's challenges.

Exemption 1 protects from disclosure any information classified "under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" that "[is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In this case, "the current, operative Executive Order is Executive Order 13526." *Khatchadourian I*, 453 F.3d at 75. Executive Order 13526 allowed classification if four conditions are met:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13,526 § 1.1(a), 75 Fed. Reg. 705 (Dec. 29, 2009). When issues of national security are involved in a FOIA dispute, a court "must accord substantial weight to an agency's affidavit concerning details of the classified status of the disputed record." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).

### 1. Defendants Released All Reasonably Segregable Portions Of The Challenged Records

When portions of records contain classified information—as this Court has previously held all records withheld under Exemption 1 do—non-classified portions of a document still "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). It is the agency's burden to show

with "reasonable specificity" the bases for its segregability determinations. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). Still, the government is entitled to a presumption that it "complied with the requirement to segregate non-exempt materials." *Sack v. CIA*, 49 F. Supp. 3d 15, 23 (D.D.C. 2014).

While defendants' previous segregability analysis was "conclusory" and lacking, *Khatchadourian*, 453 F.3d at 81, their renewed explanation and *Vaughn* Index is sufficiently detailed enough to fulfill their segregability burden. Defendants declared in each entry of their *Vaughn* Index when no "reasonably segregable non-exempt portion of the document could be released." *Sack*, 49 F. Supp. 3d at 23. These individualized declarations are "sufficient to establish that [the agency] fulfilled its obligation to segregate" when combined with "sufficiently detailed" justifications for withholdings. *Id*.

The D.C. Circuit has also approved of using affidavits to support a showing that a document cannot be further segregated. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). The Circuit explained that

> [The agency attorney] submitted a supplemental affidavit in order to further address the issue of segregability. In that statement, [the agency attorney] explained that she personally conducted a line-by-line review of each document withheld in full and determined that "no documents contained releasable information which could be reasonably segregated from the nonreleasable portions." The combination of the *Vaughn* index and the affidavits of [two agency attorneys] are sufficient to fulfill the agency's obligation to show with "reasonable specificity" why a document cannot be further segregated.

*Id*. at 776. Here, like in *Johnson*, two members of DIA's staff have filed sworn affidavits including extensive explanations of the multiple level, line-by-line review of each document. *See* Tumiski Decl. ¶ 7–11; Evitt Decl. ¶ 12–20. Evitt even reviewed the records Khatchadourian challenges in his motion for partial summary judgment yet again and provided more detail as to why the records

could not be further segregated. Evitt Decl. ¶ 12. With these new explanations of process, defendants fulfilled their segregability requirements.

### 2. Khatchadourian's Challenges To Defendants' Exemption 1 Withholdings Fail

Khatchadourian's arguments opposing defendants' summary judgment motion do not focus on particular exemptions. Instead, they focus on certain categories of information covered by multiple exemptions. That can make them hard to follow. Khatchadourian focuses on three types of information withheld under Exemption 1: (1) subject lines, (2) paragraphs withheld under the heading "Expected Media Treatment," and (3) information relating to Afghanistan. Pl.'s Mot. 12, 15, 19. But nowhere in his motion does Khatchadourian discuss the *sufficiency* of the renewed segregability process—the issue remaining for Exemption 1. For that reason alone, Khatchadourian's arguments fail. And beyond the fact that Khatchadourian's arguments are foreclosed by this Court's previous holding in *Khatchadourian I*, they are also baseless.

### (i) Khatchadourian's Challenges To Subject Line Withholdings Under Exemption 1

Khatchadourian proffers four examples to support his argument that subject lines are being improperly withheld. Pl.'s Mot. 12–14 (identifying documents V-643, V-060, V-062, and V-120). All are unmerited. For V-643, he notes that the unredacted classification marking is (U), indicating "that the subject line is not, in fact, classified." *Id.* at 12. But Evitt, reviewing the subject line again, declared V-643 is "mismarked as unclassified" and "is in fact classified." Evitt Decl. ¶ 16.[3] Khatchadourian notes documents where the subject line has been released, like V-062, and points

---

[3] Khatchadourian argues that if information was mismarked, that means it was not properly originally classified under Executive Order 13526. Pl.'s Reply 10. But he "[has] not offered any reason to believe that the markings on these documents, even if incorrect, cast doubt on their classification." *Canning v. Dep't of State*, 134 F. Supp. 3d 490, 508 (D.D.C. 2015). Defendants here "ha[ve] offered declarations attesting that the classification criteria in EO 13526 are satisfied." *Id.* at 503. They have explained that what happened here was a "marking error" and not a "classification decision." *Id.* Absent more, mere admitted mismarking does not raise a genuine issue of material fact as to whether these documents are properly classified.

to the "peculiar" inconsistency of withholding some subject lines and not others without a "particularized showing." Pl.'s Mot. 13. But, as defendants note, "[t]here is no requirement to parse a document with such particularity in a *Vaughn* Index that it address the rationale for withholding each sentence." Defs.' Reply. 9. And, to this Court, releasing some subject lines and not others indicates properly individualized segregability determinations, as opposed to blanket decisions.

Khatchadourian's final two challenges to subject lines focus on whether their disclosure could damage national security, a requirement for classification under Executive Order 13526. §1.1(a). Citing V-060, Khatchadourian argues that he does understand how a subject line could "cause harm" if released. Pl.'s Mot. 13. In response, the government explained that the subject line in V-060 "discusses the covert intelligence activities of a foreign adversary," Evitt Decl. ¶ 17. Finally, Khatchadourian speculates that he could guess the redacted subject line of V-120 based on the disclosed portions of the record, and argues that it is hard to see what "harm would result from disclosing the subject line of a memo when the body of the memo demonstrates what it concerns." Pl.'s Mot. 14. Defendants explained that "revealing the fact that IRTF wrote an entire classified memorandum about WikiLeaks issues with respect to one country may tend to reveal the extent of U.S. vulnerabilities" with respect that country. Evitt Decl. ¶ 15. These explanations indicate the possibility of significant harm to national security if released.

### (ii) Khatchadourian's Challenges To "Expected Media Treatment" Paragraphs Under Exemption 1

Khatchadourian's arguments about "Expected Media Treatment" paragraphs also miss the mark. These paragraphs are withheld portions of internal memoranda that fall under the disclosed section header "Expected Media Treatment." *See, e.g.,* V-068. Khatchadourian first expresses doubt paragraphs under the "Expected Media Treatment" header are classified because the defendants released a single paragraph under an "Expected Media Treatment" header that was

marked unclassified. Pl.'s Mot. 16. This argument baffles. The fact that the defendants properly released an unclassified portion of the document does not indicate that the portions they withheld are also unclassified.

Second, Khatchadourian disputes that the paragraphs in question could "harm [] the national defense or foreign relations of the United States," as required for withholding under Executive Order 13526. § 1.1(a); 6.1(l).  But defendants explained that the paragraphs "tend to reveal, at a granular level, the kinds of news media that the U.S. Government tracks within particular countries, its candid assessments regarding the trustworthiness of or motivations behind the reporting of particular news sources, and other information that would tend to reveal [the government's] sources and methods of collecting and synthesizing intelligence with respect to news media." Evitt Decl. ¶ 24. This affidavit "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Khatchadourian I*, 453 F. Supp. 3d at 76 (quoting *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)). Defendants have fulfilled their burden for withholding these portions of the record.

### (iii) Khatchadourian's Challenges In Light Of The Dissolution Of The Government Of Afghanistan

Finally, Khatchadourian argues that the harm requirement for classification under Executive Order 13526 is at issue with "respect to some of the records withheld by [d]efendants due to the dissolution of the government of Afghanistan." Pl.'s Mot. 19. Citing an unpublished opinion from another district, Khatchadourian asks the defendants to "evaluate and reevaluate current international . . . conditions" in light of this regime change. *Id.* (quoting *Hiken v. Dep't of Defense*, No. 06-cv-2812 (MHP), 2012 WL 13118568, at *4 (N.D. Cal. Feb. 3, 2012)). The war in

Afghanistan officially ended on August 30, 2021—near the end of defendants renewed review, Evitt Decl. ¶ 28, and more than five years into this FOIA litigation. This Court will not "demand that [defendants] undertake the Sisyphean task of checking that any exemptions properly applied . . . remain valid now." *Shapiro v. Dep't of Just.*, No. 12-cv-313 (BAH), 2020 WL 3615511, at *19 (D.D.C. July 2, 2020). Plaintiff is more than welcome to file another FOIA request. He cannot cut the line "based on post-response occurrences [that] could create an endless cycle of judicially mandated reprocessing." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991).

### C.  The Defendants Are Entitled To Summary Judgment On Exemption 3

In *Khatchadourian I*, the Court found defendants' Exemption 3 withholdings justified, with the exception of certain records withheld under 10 U.S.C. § 424. *Id.* at 88, 97. But the Court asked for more information about the segregability analysis. *Id.* at 97. Defendants have now provided additional information about both the records withheld under 10 U.S.C. § 424 and the segregability analysis. In response, Khatchadourian fails to challenge segregability, and instead again raises issues with particular withholdings. Because this Court has already determined that documents are properly withheld under Exemption 3—except for issues "which [Khatchadourian] no longer challenges, such as . . . the propriety of withholding public news articles under 10 U.S.C.  § 424," Defs.' Reply 7—this Court will only briefly address Khatchadourian's arguments after evaluating segregability.

FOIA's Exemption 3 protects information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Defendants have relied on two such statutes. *Khatchadourian I,* 453 F. Supp. 3d at 85. 10 U.S.C. § 424 exempts from disclosure information regarding "the organization or any function" of the DIA, "the number of persons employed by or assigned or detailed to" the DIA and the "name, official title, occupational series, grade, or salary of any such

person." § 424(a). In relevant part, 50 U.S.C. § 3024—the other statute in question—states that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure." § 3024(i)(1). Section 3024 is a "'near-blanket FOIA exemption' which covers public and non-public information because 'bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" *Id*. at 88 (quoting *Leopold v. CIA*, 106 F. Supp. 3d 51, 57-58 (D.D.C. 2015)).

### 1. Defendants Fulfilled Their Segregability Requirements And Explained Their 10 U.S.C. § 424 Withholdings

Defendants have now properly fulfilled their segregability requirements for Exemption 3. Like with Exemption 1, for Exemption 3 defendants declared "that [they] conducted a line-by-line review for segregable information," *Sack*, 49 F. Supp. 3d at 23, and detailed in their *Vaughn* Index when no further information could be segregated. Courts in this district have held this is "sufficient to establish that [the agency] fulfilled its obligation to segregate" when combined with "sufficiently detailed" justifications for withholdings. *Sack*, 49 F. Supp. 3d at 23. Defendants further detailed their extensive segregability process in an affidavit, which the Circuit has approved of as fulfilling segregability requirements. *Johnson*, 310 F.3d at 776. Like for Exemption 1, this Court finds that defendants have fulfilled their segregability requirements for Exemption 3.

As to the records withheld under § 424, defendants attest that the only information withheld under § 424 are: employee names and contact information; office names, symbols, and similar information; web addresses from certain internal DIA networks; names of countries or agencies with which DIA shares intelligence;[4] information that would tend to reveal the number of personnel and resources tasked to IRTF; information regarding upcoming focus areas for IRTF

---

[4] This Court previously held that § 424 covered information regarding the "countries that DIA shares specific intelligence with" and "information about the other government agencies with which DIA shares information." *Khatchadourian I*, 453 F. Supp. 3d at 86.

personnel; and information regarding the IRTF office space, building access, finances. Tumiski Decl. ¶ 13. This Court agrees that each of these categories of information, if disclosed, would "reveal DIA's organizational structure" and so are appropriately withheld under 10 U.S.C. § 424. *Khatchadourian I*, 453 F. Supp. 3d at 86.

### 2. Khatchadourian's Challenges To Defendants' Exemption 3 Withholdings Fail

Khatchadourian challenges two types of information withheld under Exemption 3: subject lines and "Expected Media Treatment" paragraphs. Pl.'s Mot. 14, 17–18. Setting aside the fact that his challenges are foreclosed by this Court's previous determinations, they also fail on the merits.

Khatchadourian first challenges subject lines withheld under Exemption 3 and, specifically, 50 U.S.C. § 3024. Pl.'s Mot. 14. He argues that defendants have not provided an explanation as to how § 3024 is implicated by redacted subject lines. *Id*. For example, he points to V-048 and complains that the *Vaughn* Index "does not contain any information about what the subject line contains or explain how release of that subject line, alone, would jeopardize 'intelligence sources and methods.'" *Id.* But Khatchadourian point to no requirement that defendants parse each document with such specificity. In any matter, defendants explain that "the subject line of [V-048] relates to the Government's assessment of the release of information from a partner agency's intelligence database, with respect to then-ongoing Iraq negotiations" and was properly withheld as "related to intelligence sources and methods." Evitt. Decl. ¶ 18. Absent evidence of "bad faith" or "contrary evidence in the record," this logical and specific affidavit entitles defendants to summary judgment as to that document. *Khatchadourian I*, 453 F. Supp. 3d 76. And while he buries it in a footnote, there is in fact evidence of good faith here: Khatchadourian notes that other documents, like V-081 and V-082, have only portions of subject lines redacted

under 50 U.S.C. § 3024, with other words disclosed. Pl.'s Mot. 15 n.4. This indicates that defendants undertook an individualized segregability analysis.

Khatchadourian's next challenge is to "Expected Media Treatment" paragraphs, which were often withheld based on a combination of both Exemption 1 and Exemption 3. Pl.'s Mot. 17–18. This Court previously noted that a "pattern of collecting particular news sources or particular types of stories could reveal a method of collecting intelligence" and thus could be withheld under Exemption 3 pursuant to 50 U.S.C. § 3024(i). *Khatchadourian I*, 453 F. Supp. 3d at 88. Defendants argue that discussions of potential media treatment tend to reveal what news media the government tracks within a particular country and its individualized assessments of the motivations or trustworthiness of international news sources. Evitt. Decl. ¶ 24. This "describes the justifications for withholding the information with specific detail [and] demonstrates that the information withheld logically fails within the claimed exemption." *Ctr. for Nat. Sec. Studies*, 331 F.3d at 927.[5]

### D.  The Defendants Are Entitled To Summary Judgment On Exemption 5

In *Khatchadourian I*, the Court found that all records defendants withheld under Exemption 5 were inter- or intra-agency communications—the first requirement of Exemption 5. 453 F. Supp. 3d at 92. However, defendants did not fulfill their burden to prove that the records fit within the deliberative process privilege, the recognized privilege defendants invoked. *Id.* Thus, unlike Exemptions 1 and 3, for Exemption 5 the Court is not just evaluating the segregability process, but

---

[5] Khatchadourian's argument regarding "Expected Media Treatment" paragraphs withheld pursuant to 10 U.S.C. § 424 rely on pure speculation. Pl.'s Mot. 17. Khatchadourian argues that "employee names and contact information, as well as office names/symbols and similar information," "the countries with which [DIA] shares intelligence," or information that "would tent to reveal [DIA's] agency partners"—information withheld under 10 U.S.C. § 424—are simply not the type of information that would appear under "Expected Media Treatment." *Id.* He bases this solely on one disclosed "Expected Media Treatment" paragraph. This baseless guesswork is insufficient to overcome the weight courts are required to give to agency affidavits. *Ctr. for Nat. Sec. Studies*, 331 F.3d at 927.

also the withholdings themselves. Khatchadourian challenges both a broad category of withholdings under Exemption 5—Category C—as well as specific, individualized withholdings.

"FOIA's Exemption 5 exempts from disclosure any 'interagency or intra-agency' records which would otherwise be exempted from discovery in the context of civil litigation." *Khatchadourian I*, 453 F. Supp. 3d at 90 (citing 5 U.S.C. § 552(b)(5)). "A record qualifies as exempt only if: (1) its source is a government agency, and (2) it falls within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Id.* (internal quotation marks omitted).

## 1. Defendants Have Proven That Records Withheld Under Exemption 5 Fall Within the Deliberative Process Privilege

As this Court previously explained:

> A record protected under [the deliberative process privilege] must be both "predecisional" and "deliberative." *Id.* A record is predecisional if it was "generated before the adoption of an agency policy[.]" *Id.* A reviewing court's task is not merely to determine the date of a decision and then the date of a relevant record to determine whether it is predecisional. *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004) (holding that such an approach is "simplistic"). A record generated after one decision can be the basis of another, future decision. *See id.* Alternatively, a record post-dating a decision may still reflect predecisional information if it "recounts predecisional deliberations." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, No. 04-cv-1625 (PLF), 2006 WL 6870435, at *7 (D.D.C. Dec. 22, 2006) (citation omitted). Whether a record is predecisional depends on a record's context relative to particular agency decisions or series of decisions. *See Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 61 (D.D.C. 2014). It is the agency's burden to "pinpoint" a particular decision or "sub-decision" which the record informed. *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (citation omitted); *100Reporters LLC* [*v. U.S. Dep't of Just.*], 248 F. Supp. 3d [115,] 153 [(D.D.C. 2017)]. An agency cannot merely point to an "umbrella process" if there are "subsidiary decisions" that a record informs. *100Reporters LLC*, 248 F. Supp. 3d at 153.
>
> A record is deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866.

> This covers "recommendations, draft documents, proposals, suggestions" and other documents that would "inaccurately reflect or prematurely disclose" the agency's views. *Id.* Material that is "purely factual" cannot generally be withheld unless it reflects "exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (citation omitted). The distinction between "purely factual" information and information reflecting agency deliberation is not always clear. *Id.*; see *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 164-65 (D.D.C. 2017). Courts in this Circuit therefore apply a "functional" approach to determine the applicability of the privilege in which "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Hardy*, 243 F. Supp. 3d at 164 (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513 (D.C. Cir. 2011)).

*Id.* at 91.

To prove that a record meets these requirements, defendants accordingly must establish: (1) the deliberative process involved; (2) the role the document played in the course of the deliberative process; and (3) the nature of the decision-making authority vested in the office or person issuing the records, along with where the parties to the documents sit in the chain of command. *Id.*

Defendants now identify six categories withheld under Exemption 5 and detail why records in each of those categories are predecisional and deliberative.

- Category A involves "[d]ocuments updating DIA leadership regarding policy issues related to the IRTF's ongoing review of U.S. vulnerabilities after WikiLeaks, for the purpose of informing leadership's decision-making on the contents of the final IRTF report and/or taking countermeasures to mitigate such vulnerabilities." Tumiski Decl. ¶ 16. These records include documents that inform superiors of "issues for decision" and frame deliberations regarding, among other things, "decision on countermeasures to reduce or otherwise mitigate U.S. vulnerabilities as a result of WikiLeaks' unauthorized disclosure." *Id.*

- Category B is comprised of slide-decks presented by subordinates to superior officers with assessments on particular issues. *Id.* With these decks, subordinates "propos[ed] steps for future action." *Id.*

- Category C includes "[r]ecords presented by subordinate officers to superiors reflecting those officers' interim assessments of WikiLeaks-related vulnerabilities with respect to particular foreign policy and/or military interests." *Id.*

- Category D includes records requesting "further information from inter-agency partners relevant to IRTF tasks." Tumiski Decl. ¶ 16.

- Category E includes a response to a request for "a predecisional assessment regarding whether certain information could be safely shared with foreign partners." *Id.*

- Category F includes "[r]ecords presented by subordinate officers to superiors reflecting draft talking points on certain foreign relations issues." *Id.*

Far from the "broad and opaque" nature of defendants' previous *Vaughn* Index and supporting affidavits, *Khatchadourian I,* 453 F. Supp. 3d at 93, their renewed explanations detail how these records are predecisional and deliberative. Instead of identifying two "umbrella" decisions like before, *id.* at 92, defendants identify a number of smaller decisions with specificity—assessments regarding what information could be shared with other partners, decisions regarding what superiors should say when discussing foreign relations issues, individualized assessments on discrete issues presented to superiors via slide deck, and decisions on how to protect United States vulnerabilities through potential countermeasures. Tumiski Decl. ¶ 16. The agency has properly pinpointed "sub-decision[s]" which the record informed, *100Reporters LLC*, 248 F. Supp. 3d at 153, and illustrated that these records are predecisional. And Khatchadourian concedes that all but one of these categories are properly withheld—he challenges only the records included in Category C.

Defendants have also established that these records are deliberative. The "function and significance" in the deliberative process that each document played is now clear. *Trea Senior Citizens League v. Dep't of State*, 923 F. Supp. 2d 55, 67 (D.D.C. 2013). The D.C. Circuit has identified "two factors that can assist the court in determining whether [the deliberative process] privilege is available: the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Senate of the Commonwealth of P.R. v. U.S. Dep't of Just.*, 823 F.2d 574, 586 (D.C. Cir. 1987) (citations omitted). Defendants have identified both those factors here. They explain "the relation between the author and the recipients of the documents" by indicating when materials went from subordinate officers, who lack decisionmaking authority, to superiors. *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991). Memoranda from subordinates to superior officers recommending certain strategies in light of a "particular controversy" are the "classic case of the deliberative process at work." *Coastal States Gas. Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir 1980). Defendants also now distinguish between talking points, slide decks, internal memoranda, and interagency requests and responses. Tumiski Decl. ¶ 16. Each of the types of documents withheld under Exemption 5 "informed agency decision making in distinct ways." *Khatchadourian I,* 453 F. Supp. 3d at 95. Now, unlike before, defendants have "explain[ed] how." *Id*.

Khatchadourian's arguments to the contrary are unconvincing. He argues that defendants failed to establish that records in Category C are predecisional because defendants do not pinpoint the exact decision in question for each individual record, instead using categories. Pl.'s Mot. 26. But Khatchadourian seeks a level of specificity not required. While the "deliberative process privilege is [more] dependent upon the individual document and the role it plays in the

administrative process" than other exemptions, *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d. 101, 189 (D.D.C. 2013), an agency need only "reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection," *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). In response to Khatchadourian's opposition, defendants clarified that Category C documents involve "one or more military diplomatic issues with respect to the WikiLeaks" leak, and informed five types of decisions: "(1) whether to escalate the issue by informing superiors, (2) whether to engage on the issue with agency partners, (3) whether to make public statements, (4) whether to engage in discussions with particular countries or other entities to lower tensions, or (5) whether to take no action." Evitt Decl. ¶ 39. These identified decisions are specific enough for this Court to conclude that the documents are predecisional. The Court need not require defendants disclose the "particular decisions themselves," which may reveal the "very information the agency hopes to protect." Defs.' Reply 22 (quoting *Am. Civ. Liberties Union v. CIA*, 710 F.3d 422, 434 (D.C. Cir. 2013)).

Khatchadourian also demands a "precisely tailored" explanation for each withheld record under Category C. *Id.* But that is exactly what defendants provide: "At a minimum, the agency must provide three basic pieces of information in order for the deliberative-process privilege to apply: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 189. Those facts are provided for each document here. While Khatchadourian may find the explanations provided "rote" because they apply to both desk notes and more formal memoranda, Pl.'s Mot. 27, the law does not require more.

### 2. Khatchadourian's Challenges to Individual Documents Do Not Alter This Court's Analysis

Outside of his Category C challenges, Khatchadourian also challenges a number of individual documents withheld under Exemption 5 based on conjecture as to what they contain. This conjecture mostly derives from Khatchadourian's interpretations of the title of these documents. These challenges are rejected.

Khatchadourian argues that V-622 and V-624, both titled "Response Memo from IRTF to Senator," are not intra- or inter-agency documents because their titles indicate they were released to Congress and so cannot be withheld 5. Pl.'s Mot. 23. But this Court previously held that all records withheld under Exemption 5 were inter- or intra-agency records, *see Khatchadourian I*, 453 F. Supp. 3d at 92. In light of defendants sworn declaration that these were internal IRTF memoranda discussing proposed responses to questions from Congress and were not released to Congress, Evitt Decl. ¶¶ 34–37, this Court sees no reason to revisit that holding.

Khatchadourian next argues that defendants are improperly withholding a number of "final" talking points under Exemption 5. Pl.'s Mot. 28. He infers from the fact that other documents are labeled "draft talking points" while certain documents are merely labeled "talking points" that these were final talking points taken up to the podium by Secretary of Defense Robert Gates. *Id.* at 29. Defendants explain these were talking points created for internal briefing meetings, not public adoption, Evitt Decl. ¶ 41, and so are predecisional and deliberative. While Khatchadourian argues that these are not predecisional because they were used the internal meetings and thus adopted, Pl.'s Reply 17, he seems to misunderstand the nature of the relevant decision. Defendants does not argue that the relevant decision was *what to say* in the internal meeting. For example, the *Vaughn* Index for V-478 (one of the records in question) explains that

the relevant decision was the "impact assessment of the unauthorized disclosure of information resulting from leaked documents." ECF No. 123-3 at 22.

Next, Khatchadourian challenges V-495, which is titled "Finished Intelligence Product" and V-637, which is titled "Final Report of the Department of Defense Information Review Task Force." Pl.'s Reply 18. A finished product is not predecisional. But defendants contend that these are both "draft document[s]" because they contain "no final document number" or "placeholder for date." Evitt Decl. ¶¶ 43–44, 46. While Khatchadourian argues that this is a "discrepancy" in the defendants' submissions that illustrates bad faith, the Court sees no discrepancy. Non-withstanding the titles of the documents, which the defendants cannot change, they have consistently asserted that these documents are predecisional. And, in any event, because these paragraphs of the records in question are withheld in full under Exemptions 1 and 3, Evitt. Decl. ¶ 42, they will not bar summary judgment.[6] *Gellman v. Dep't of Homeland Sec.*, No. 16-cv-635 (CRC), 2020 WL 1323896, at *13 n.17 (D.D.C. Mar. 20, 2020) ("To the extent a document or redaction is properly withheld under another exemption already upheld by the Court, the Government need not review that document for the application of the deliberative process privilege.")

Khatchadourian challenges V-549 and V-550, because defendants failed to identify "the identifies, positions, and job duties of the authors and recipients of the withheld documents." Pl.'s Mot. 31 (quoting *Khatchadourian I*, 453 F. Supp. 3d at 95). Defendants have corrected that issue and explained that both the documents are emails "sent by subordinate officials to superiors" and

---

[6] The same goes for V-606, the "Red Line Rules," which defendants now admit should not have been withheld under Exemption 5, but which defendants withheld in full under Exemption 3. Evitt Decl. ¶ 45.

"discuss[] the content of classified intelligence cables that are attached to the emails." Evitt Decl. ¶ 47. These documents are properly withheld under Exemption 5.

Finally, Khatchadourian again challenges subject lines and "Expected Media Treatment" paragraphs withheld under Exemption 5. Pl.'s Mot. 15, 18. Khatchadourian argues that neither of these types of information can be deliberative. *Id.* As to "Expected Media Treatment," defendants assert that these paragraphs "discuss the likely impact of WikiLeaks cables with respect to particular news events and noteworthy foreign policy issues in particular countries, and make recommendation on how high-level officials should think through decisions on those issues." Evitt Decl. ¶ 26. That information is properly predecisional and deliberative. As to subject lines, none of them are withheld on the basis of Exemption 5 alone, Evitt Decl. ¶ 19, and we have previously approved of their withholding under Exemptions 1 and 3, *supra*. The Court need not undergo its subject line analysis for a third time. *Gellman*, 2020 WL 1323896, at *13 n.17. The subject lines are properly withheld.

### 3. Defendants Fulfilled Their Segregability Obligations For Exemption 5

Defendants previously failed to explain with "reasonably specificity" how the DIA undertook its segregability analysis for Exemption 5. *Khatchadourian I*, 453 F. Supp. 3d at 95. Now, like for Exemptions 1 and 3 above, defendants have provided significant detail about their segregability process as to Exemption 5. Tumiski Decl. ¶ 11. This detail and the two-level review process described fulfill defendants' segregability obligations for Exemption 5, just as it did for the previous two Exemptions.

### E.  Khatchadourian Is Not Entitled To Summary Judgment For Document V-406 Or The Names Of IRTF Leadership

Khatchadourian raises two final challenges to defendants' withholdings—one to document V-406 and one to the withholding of "the names of IRTF senior leadership." Pl.'s Mot. 21–23. The Court will briefly address each of these arguments.

To start, V-406 is withheld coextensively under Exemptions 3 and 5, Evitt Decl. 21 n.2, and thus its exemption is already upheld by the Court. The Court accordingly need not address the issue of whether it is properly withheld under Exemption 7. *Gellman*, 2021 WL 132896, at *13 n.17.

Second, Khatchadourian asks the Court to order defendants to reprocess the documents again because defendants redacted the names of IRTF senior leadership. Pl.'s Mot. 32. But Khatchadourian already has this information. While the records here have the names of Scott Liard, John Kirchhofer, and Robert A. Carr—all IRTF senior leadership—redacted, defendants have since admitted that these men were IRTF Chief, IRTF Deputy, and IRTF Director, respectively. Suppl. Decl. of Alessia Williams ¶ 38, ECF No. 85-1. Khatchadourian argues that "persist[ing]" to redact these names on the record is bad faith. Pl.'s Mot. 32. But defendants have disclosed this information on the record, and none of Khatchadourian's cited cases require an agency to reprocess documents yet again to unredact specific names when they have already admitted to plaintiff the exact information plaintiff seeks.

## IV.  CONCLUSION

Based on the foregoing, the Court will **GRANT** defendants' motion for summary judgment and **DENY** plaintiff's motion for partial summary judgment. A separate order consistent with this opinion will follow.

Date: _3/31/22_

Royce C. Lamberth
United States District Judge